Of Counsel:
DAMON KEY LEONG KUPCHAK HASTERT
Attorneys at Law
A Law Corporation

NA LAN                                    9189-0
nl@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

EDWARD F. RAMOS
eramos@kktplaw.com
(pro hac vice)
JOHN P. PRATT
jpratt@kktplaw.com
(pro hac vice)
KURZBAN KURZBAN TETZELI & PRATT, P.A.
131 Madeira Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-0060
Facsimile: (305) 444-3503

*Attorneys for Petitioner*

# UNITED STATES DISTRICT COURT
# DISTRICT OF HAWAII

| | |
|---|---|
| Chunming Wang,<br><br>    Petitioner,<br><br>v.<br><br>Estela Derr, Warden, Federal Detention Center, Honolulu, Hawaii; Polly Kaiser, Acting Field Office Director, San Francisco Field Office, Immigration and Customs Enforcement; Pam Bondi, Attorney General of the United States; Kristi Noem, Secretary of Homeland Security, in their official capacities,<br><br>    Respondents. | **AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**Case No: 25-cv-231-JAO-RT** |

## INTRODUCTION

1.    Chungming Wang is a 76-year-old Chinese national who has lived in the United States for more than six years.

2.    In 2018, Mr. Wang's U.S.-citizen daughter, Yunlu Wang, petitioned for Mr. Wang, and Mr. Wang sought lawful permanent resident ("green card") status based on that relationship which has since been fully acknowledged by the U.S. Government.

3.      After a lengthy administrative process, United States Citizenship and Immigration Services ("USCIS") denied Mr. Wang's application for adjustment of status, Form I-485, on May 30, 2025.

4.      Before Mr. Wang could even receive that decision in the mail, special agents from Immigration and Customs Enforcement ("ICE")—identifying themselves only as officers with the Department of Homeland Security—invited Mr. Wang to visit their office regarding an unrelated matter. Believing the invitation to be extended in good faith, Mr. Wang appeared as instructed.

5.      The invitation turned out to be a ruse. After a lengthy interrogation, ICE officers arrested Mr. Wang, summarily detained and transferred him to the Federal Detention Center in Honolulu, and placed him in expedited removal proceedings.

6.      After Mr. Wang filed this action, ICE gave up pursuing expedited removal against Mr. Wang, opting instead to place him in full removal proceedings under Section 240 of the Immigration and Nationality Act by issuing him a Notice to Appear ("NTA"). *See* 8 U.S.C. § 1229a.

7.      The NTA reflects ICE's position that Mr. Wang is a so-called "arriving alien"—a designation which gives ICE unilateral authority to determine Mr. Wang's release and deprives Mr. Wang of the opportunity to seek bond from a neutral immigration judge.

8.    ICE's position that Mr. Wang is an "arriving alien" is legally erroneous, unlawfully deprives Mr. Wang of his right to a bond hearing, and threatens to subject Mr. Wang to prolonged detention and severe personal harm, as he is currently undergoing advanced medical treatment in Hawai'i for a brain tumor, among other ailments.

9.    For the reasons that follow, the Court should grant the petition for a writ of habeas corpus and order Mr. Wang's release from immigration custody, or in the alternative, grant him the opportunity to seek release on bond before an immigration judge.

## JURISDICTION

10.    This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*.

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

12.    This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## REQUIREMENTS OF 28 U.S.C. § 2243

13.    The Court must grant the petition for writ of habeas corpus or issue an

order to show cause ("OSC") to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

14.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

## PARTIES

15.     Petitioner Chunming Wang is a Chinese national who was residing in the United States under color of law based on a pending application for adjustment of status for more than six years. He is currently detained by Immigration and Customs Enforcement ("ICE") at the Federal Detention Center in Honolulu, and is therefore under the direct control of Respondents and their agents.

16.     Respondent Estela Derr is sued in her official capacity as Warden of the Federal Detention Center in Honolulu, Hawaiʻi. As Mr. Wang is presently detained at the Federal Detention Center, Respondent Derr is Mr. Wang's custodian.

17.     Respondent Polly Kaiser is sued in her official capacity as Acting Director of Immigration and Customs Enforcement's San Francisco Field Office. As

Hawai'i is under the jurisdiction of ICE's San Francisco Field Office, Acting Director Kaiser is Petitioner's custodian.

18.    Respondent Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees U.S. Immigration and Customs Enforcement, the component agency responsible for Petitioner's detention. Respondent Noem is a legal custodian of Petitioner.

19.    Respondent Pam Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the Board of Immigration Appeals.  Respondent Bondi is a legal custodian of Petitioner.

## STATEMENT OF FACTS

### Legal Background

20.    Under the Immigration and Nationality Act, U.S. citizens may file a visa petition for an immediate relative, including the U.S. citizen's parent. This petition is filed on Form I-130.

21.    If approved, the I-130 petition entitles the immediate relative of the U.S. citizen to such classification, which in turn allows the applicant to seek lawful permanent resident ("green card") status in the United States.

22.    An immediate relative who is in the United States may concurrently file an application for "adjustment of status" with the immediate relative's Form I-130. *See* 8 U.S.C. § 1255(a). This application is filed on Form I-485.

23.    Unless the noncitizen is in removal proceedings, applications for adjustment of status are generally adjudicated by United States Citizenship and Immigration Services ("USCIS") in the first instance.

24.    If USCIS denies the application, the applicant is entitled to renew the adjustment of status application with an immigration judge if the applicant is placed in removal proceedings.

25.    An applicant placed in removal proceedings before an immigration judge under Section 240 of the INA, if detained at all, is generally entitled to seek release on bond so long as the applicant is not a flight risk or a danger to the community.

26.    A narrow exception exists, however, for so-called "arriving aliens." *See* 8 C.F.R. § 1.2 (defining "arriving alien").

27.    Although individuals who are paroled into the United States are generally considered "arriving aliens" under the regulatory definition, the regulation

expressly exempts noncitizens paroled "pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States." 8 C.F.R. § 1.2 (definition of "arriving alien").

28.    While ICE may release an individual classified as an "arriving alien" through a grant of parole, the "arriving alien" designation deprives the noncitizen of the ability to seek bond from an immigration judge. 8 C.F.R. § 1003.19(h)(2)(i)(B); *id.* § 236.1(c)(1).

29.    Therefore, an individual who has been denied parole by ICE is subject to detention throughout the pendency of their removal proceeding—which may last months or even years.

30.    Separately, a narrow group of noncitizens are subject to "expedited removal"—a set of removal procedures which bypass proceedings before an immigration judge and instead allow immigration offers to order the summary deportation of noncitizens from the United States. *See* 8 U.S.C. § 1225(b)(1).

31.    An individual placed in expedited removal proceedings is subject to mandatory detention. 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 235.3(b)(2).

### Factual Background

32.    Chungming Wang is a 76-year-old Chinese national.

33.    He is the father of a U.S. citizen, Ms. Yunlu Wang.

8

34.    In July 2018, Mr. Wang was admitted to the United States on a B-2 tourist visa.

35.    In October 2018, Mr. Wang's U.S.-citizen daughter, Yunlu Wang, filed a Form I-130 petition seeking to classify Mr. Wang as her parent.

36.    USCIS approved the I-130 petition on September 16, 2019, thereby recognizing the parent-child relationship for U.S. immigration purposes, and making an immigrant visa immediately available to Mr. Wang.

37.    On the same day Yunlu Wang petitioned for her father, Mr. Wang concurrently filed an application for adjustment of status to lawful permanent resident (Form I-485) based on his father-daughter relationship to Yunlu.

38.    Mr. Wang also applied for an "advance parole" document pursuant to his application for adjustment of status.

39.    Mr. Wang was physically present in the United States at the time he applied for adjustment of status and for advance parole pursuant to that application.

40.    While Mr. Wang remained in the United States, USCIS issued Mr. Wang an advance parole document on March 22, 2019 with a validity period through March 21, 2020. *See* **Exhibit 4**.

41.    After obtaining the advance parole document, and during the pendency of his application for adjustment of status, Mr. Wang departed the United States briefly.

42.    Upon Mr. Wang's return, Mr. Wang used his advance parole document to reenter the United States on January 3, 2020 to continue pursuing his application for adjustment of status.

43.    Mr. Wang's last entry to the United States was on January 3, 2020 pursuant to USCIS's issuance of an advance parole document.

44.    Mr. Wang appeared at the local USCIS Field Office twice for interviews on his adjustment application—the last interview occurring in August 2021.

45.    Nearly four years later, on May 30, 2025, USCIS denied Mr. Wang's application for adjustment of status.

46.    USCIS sent the decision denying Mr. Wang's application for adjustment of status to Mr. Wang and his counsel of record via First Class Mail, but they did not actually receive the decision until June 5, 2025.

47.    Upon information and belief, on the date the USCIS denial was issued—May 30, 2025—special agents from Immigration and Customs Enforcement ("ICE") contacted Mr. Wang to invite him to visit their office on June 2, 2025 to discuss an unrelated matter. The agents did not inform him of the Denial, or that the meeting was in any way related to Mr. Wang's immigration case.

48.    Accepting this invitation in good faith, Mr. Wang agreed to meet with the special agents.

49.     During the meeting, upon information and belief, the ICE special agents hand delivered I-485 and I-601 denial decisions and informed Mr. Wang that he would be placed in expedited removal proceedings and subject to mandatory detention.

50.     Mr. Wang was issued a notice titled "Information About Credible Fear Interview" which bore his alien registration number, and which stated in clear terms that he had "been placed in expedited removal proceedings." *See* **Exhibit 1**.

51.     In the late afternoon of June 2, 2025, Mr. Wang was transferred to ICE custody at the Federal Detention Center in Honolulu.

52.     Mr. Wang filed this petition for a writ of habeas on the evening of June 2, 2025.

53.     On June 4, 2025, Mr. Wang was served with a Notice to Appear ("NTA") which indicated that in liu of pursuing expedited removal, ICE had placed Mr. Wang in removal proceedings under Section 240 of the Immigration and Nationality Act. *See* **Exhibit 2**.

54.     The NTA indicates that Mr. Wang has been classified as an "arriving alien."

55.     As an arriving alien, Mr. Wang is unable to seek bond from an immigration judge and thus faces the prospect of prolonged detention during the pendency of his removal proceedings.

56.    Mr. Wang receives medical treatment in Honolulu, Hawai'i for a brain tumor, where he has undergone gamma knife radiation treatment, and which requires periodic monitoring via MRI.

57.    Mr. Wang also has an underlying heart condition for which he is under the care of cardiologist Dr. Edward Shen, M.D., and is also being treated by a neurologist at Straub Medical Center in Honolulu.

58.    A letter from Mr. Wang's treating physician outlining his medical conditions and a summary of his treatment regimen is appended at **Exhibit 3**.

59.    Given the numerous serious medical conditions from which he suffers, Mr. Wang's continued detention poses a serious risk to his health and welfare.

## CLAIM FOR RELIEF
### Violation of the Immigration And Nationality Act and Implementing Regulations

60.    Mr. Wang's detention without opportunity for bond as an "arriving alien" violates the plain terms of the Immigration and Nationality Act and its implementing regulations.

61.    The plain language of the regulation defining "arriving alien" expressly exempts from its purview noncitizens who were paroled into the United States "pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States." 8 C.F.R. § 1.2 (definition of "arriving alien").

62.     Mr. Wang falls outside the regulatory definition of "arriving alien," as he last entered the United States "pursuant to a grant of advance parole" which he obtained prior to his departure in connection with his application for adjustment of status. *Id.*

63.     Moreover, in addition to the plain language of the regulation, Mr. Wang's entry on an advance parole travel document means that, under immigration law, he is properly treated as maintain the same status he held prior to his departure—to wit, as an individual admitted on a B-2 visa which had expired. *See Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012) (noting that temporary travel on advance parole pursuant to a pending application for adjustment of status does not count as a "departure…from the United States"). A B-2 visa overstay is thus not properly classified as an "arriving alien" for reasons independent of the regulatory definition.

64.     As a result, the Government's decision to designate Mr. Wang as an "arriving alien," and thereby to detain him without an opportunity to request release on bond before a neutral immigration judge, contravenes the INA and its implementing regulations.

### RELIEF REQUESTED

**WHEREFORE,** Petitioner respectfully requests this Court to grant the following:

a.    Assume jurisdiction over this matter.

b.    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

c.    Declare that Petitioner's detention as an "arriving alien" violates the Immigration and Nationality Act.

d.    Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or in the alternative, to afford him an opportunity to seek release on bond from an immigration judge.

e.    Enjoin Petitioner's removal from the State of Hawai'i pending a final decision on this habeas action.

f.    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law.

g.    Grant such other relief as this Court may deem just and proper.

DATED: Honolulu, Hawaii, June 5, 2025.

DAMON KEY LEONG KUPCHAK HASTERT

/s/ Na Lan
NA LAN
nl@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

14

EDWARD F. RAMOS
eramos@kktplaw.com
(pro hac vice)

JOHN P. PRATT
jpratt@kktplaw.com
(pro hac vice)

KURZBAN KURZBAN
TETZELI & PRATT, P.A.
131 Madeira Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-0060
Facsimile: (305) 444-3503


## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Chungming Wang, and submit this verification on his

behalf. I hereby verify that the factual statements made in the foregoing Petition for

Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 5th day of June, 2025.

/s/ Na Lan
NA LAN
nl@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242