

IRA KURZBAN - FOUNDER
JED KURZBAN - PARTNER
HELENA TETZELI - PARTNER
JOHN PATRICK PRATT - PARTNER
EDWARD RAMOS - PARTNER
KEVIN A. GREGG - PARTNER

131 MADEIRA AVENUE
CORAL GABLES, FLORIDA 33134
TELEPHONE (305) 444-0060
TELECOPIER (305) 444-3503
WWW.KKTPLAW.COM

July 2, 2025

The Hon. Jill Otake
U.S. District Court
District of Hawaii
300 Ala Moana Blvd
Honolulu, HI, 96850

**VIA CM/ECF**

**RE: Wang v. Derr et al., 1:25-cv-00231-JAO-RT**

Dear Judge Otake,

      Petitioner writes to inform the Court in advance of tomorrow's status conference that the Immigration Judge denied Petitioner's request for bond on the ground that "the Respondent has been charged as an arriving alien." At the bond hearing, the Immigration Judge determined that she lacked authority to consider the merits of that issue.

      In case it is helpful to this Court's consideration of the matters before it, Petitioner respectfully attaches to this letter the record of the custody redetermination (bond) proceedings before the Immigration Court. Please note that Petitioner has omitted the evidentiary submissions of both Petitioner and the Government as they contain extensive material of a confidential nature, including the decision denying Petitioner's application for adjustment of status and Petitioner's medical records, among other things. If the Court wishes to review these submissions, Petitioner would request leave to file them under seal.

      Respondents take no position regarding the filing of these materials, but reserve the right to oppose any arguments Petitioner may make regarding the bond hearing record.

Respectfully submitted,

/s/ Edward F. Ramos
Edward F. Ramos
Counsel for Petitioner

cc: all counsel via email

**Record of Petitioner's Bond Proceedings Before the Immigration Judge**

| Tab | Document | Date of Submission (reverse chronological order) |
|---|---|---|
| 1 | IJ Order Denying Bond | 7/2/2025 |
| 2 | Petitioner's Witness List and Index of Evidence | 7/1/2025 |
| 3 | Petitioner's Memorandum in Support of Bond | 7/1/2025 |
| 4 | The Department of Homeland Security's Prehearing Statement | 7/1/2025 |
| 5 | Notice (Amended) of Bond Hearing | 7/1/2025 |
| 6 | Notice of Bond Hearing | 6/26/2025 |
| 7 | Petitioner's Brief in Support of Bond Eligibility | 6/25/2025 |

** Petitioner has omitted the filing of the evidentiary submissions of Petitioner and the Government due to the confidential nature of the materials they contain. Petitioner will file these materials at the Court's request, but would seek leave to do so under seal.

Tab 1



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HONOLULU IMMIGRATION COURT**

Respondent Name:

    WANG, CHUNMING

To:

    Gregg, Kevin Arthur
    131 Madeira Avenue
    Coral Gables, FL 33134

A-Number:
219-032-414
Riders:
In Custody Redetermination Proceedings

Date:
07/02/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because
    the Respondent has been charged as an arriving alien.

☐ Granted. It is ordered that Respondent be:
    ☐ released from custody on his own recognizance.
    ☐ released from custody under bond of $
    ☐ other:

☐ Other:

Immigration Judge: FEDER, ROBIN 07/02/2025

Appeal:    Department of Homeland Security: ☑ waived  ☐ reserved
           Respondent:                      ☐ waived  ☑ reserved
Appeal Due: 08/01/2025

## Certificate of Service

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable
To: [ ] Noncitizen | [ ] Noncitizen c/o custodial officer | [ E ] Noncitizen's atty/rep. | [ E ] DHS
Respondent Name : WANG, CHUNMING | A-Number : 219-032-414
Riders:
Date: 07/02/2025 By: KEANU, CHALIA, Court Staff

Tab 2

**DAMON KEY LEONG KUPCHAK HASTERT**                    **DETAINED**
**Attorneys at Law**
**A Law Corporation**

NA LAN
nl@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

**KURZBAN KURZBAN TETZELI & PRATT, P.A.**
KEVIN A. GREGG
Kgregg@kktplaw.com
EDWARD F. RAMOS
eramos@kktplaw.com
JOHN P. PRATT
jpratt@kktplaw.com
131 Madeira Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-0060
Facsimile: (305) 444-3503

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## HONOLULU IMMIGRATION COURT

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming Wang,<br><br>Respondent | **File No.: A219-032-414**<br><br>**In Custody Redetermination Proceedings** |
| **Immigration Judge:**<br>The Hon. Robin Feder | **Hearing (Custody Redetermination):**<br>July 2, 2025 at 9:00 a.m.<br>300 Ala Moana Blvd., RM 8-112<br>Honolulu, HI 96850 |

**RESPONDENT'S WITNESS LIST AND EVIDENTIARY SUBMISSION IN SUPPORT OF**
**<u>CUSTODY REDETERMINATION</u>**

1

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HONOLULU IMMIGRATION COURT**

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming Wang,<br><br>    Respondent | **File No.: A219-032-414**<br><br>**In Custody Redetermination**<br>**Proceedings** |

**RESPONDENT'S WITNESS LIST AND EVIDENTIARY SUBMISSION IN SUPPORT OF**
**CUSTODY REDETERMINATION**

    Respondent respectfully submits the following witness list in support of his request for release from immigration detention:

**WITNESS LIST**

| No. | Name | Description of Testimony |
|---|---|---|
| 1. | **Loren Graham** | Loren Graham is a friend and business associate of Mr. Wang who serves as real estate broker and property manager for Mr. Wang's real properties investment in Hawaii. He is willing to serve as Mr. Wang's local sponsor, including paying for the bond and ensuring he will timely attend all future hearings in removal proceeding. He will testify about Mr. Wang's strong ties to the local community, good moral character, and sincere love for Hawaii and US.<br><br>Estimated time for testimony: 10 min. |
| 2. | **Dr. Liang-Hsien Eli Hahn** | Dr. Hahn is Mr. Wang's primary care physician and personal friend. He will testify about Mr. Wang's medical conditions, including brain tumor, permanent atrial fibrillation, severe obstructive sleep apnea and hypopnea syndrome with moderate oxygen desaturation. He will also testify about Mr. Wang's generosity in giving his time, energy and support to others, mentoring young entrepreneurs, devotion to be a good father to Joey, and business leadership with integrity and civic duty.<br><br>Estimated time for testimony: 10 min. |
| 3. | **Professor Kate Zhou** | Professor Kate Zhou is a friend of Mr. Wang. She will testify about Mr. Wang's strong moral principles, deep |

| | | |
|---|---|---|
| | | respect for American values, commitment to Hawaii, and genuine love for Hawaii and its people.<br><br>Estimated time for testimony: 10 min. |
| **4.** | **Faye Chen** | Faye Chen is a friend and business associate of Mr. Wang. She provided insurance planning and financial consulting to Mr. Wang. She will testify about Mr. Wang's strong sense of responsibility, integrity and high ethical standards, and willingness to help others in the community.<br><br>Estimated time for testimony: 10 min. |
| **5.** | **Chunming Wang (Respondent)** | Respondent will testify that he is neither a danger to the community, nor a flight risk, and he poses no threat to national security. He intends to renew his I-485 and pursue asylum and related relief and protection in removal proceeding.<br><br>Estimated time for testimony: 60 min. (additional time needed for Mandarin interpreter) |

## **EVIDENCE LIST**

Respondent respectfully submits the following evidentiary list in support of his request for release from immigration detention:

| Tab No. | Description | Page No. |
|---|---|---|
| | | |
| **1.** | Respondent's B1/B2 Visa, I-94 Stamp, and passport identification page, confirming Respondent was admitted into the US in valid B2 status and he is 76 years old | 1-5 |
| **2.** | Respondent's I-130 Approval Notice (MSC1990086525) as father of a US citizen | 6-7 |
| **3.** | Respondent's I-131 Approval Notice (MSC1990086526) and copy of the advance parole issued by USCIS and used by Respondent during pendency of his Adjustment of Status Application | 8-11 |
| **4.** | Respondent's CBP I-94 and Travel History, confirming Respondent has lawfully and peacefully lived in Honolulu, HI for almost 7 years before he was taken into ICE custody | 12-16 |
| **5.** | Verification Letters from Liang-Hsien Eli Hahn, M.D. regarding Respondent's multiple medical conditions and need for MRI monitoring every six months | 17-18 |
| **6.** | Letter from Eric A. Crawley, MD confirming Respondent's medical conditions and need for CPAP machine for sleeping | 19 |
| **7.** | Declaration of Loren Graham, Realtor – Broker in Charge of Graham Group Hawaii, realtor, property manager, friend, and local sponsor for Respondent, who is willing to pay bond and ensure Respondent's timely appearance in future hearings in removal proceeding in Hawaii | 20-21 |
| **8.** | Declaration of Faye Chen, Business Partner at GPS Financial, insurance agent and financial consultant and friend of Respondent | 22-25 |
| **9.** | Declaration of Liang-Hsien Eli Hahn, Respondent's primary care physician | 26-27 |

| 10. | Declaration of Kate Zhou, Political Science Professor at UH Manoa, who has personal knowledge of Respondent's firm belief in democracy and American values, and commitment to give back to the Hawaii local community | 28-29 |
|---|---|---|
| 11. | Handwritten letter from Respondent's 13-year-old son, who is studying in US on F1 status in Honolulu, HI and relies on Respondent as his sole custodian since his parents' divorce a year ago | 30 |
| 12. | Letter from Rongzheng ("Joey") Wang's cardiologist confirming Joey's congenital heart disease and need for periodic medical care | 31 |
| 13. | Declaration of Yunlu Wang, Respondent's daughter and US citizen petitioner, who lives with her husband and two grandchildren of Respondent in California | 32-33 |
| 14. | Notarized Divorce Decree of Respondent with Ms. Lu Liu, ex-wife of Respondent and Joey's mother, issued on June 5, 2024, with English translations, confirming Respondent is a single parent who was awarded sole custody of Joey | 34-55 |
| 15. | First Hawaiian Bank Reference Letter showing that Respondent has been a valued First Hawaiian Bank private banking customer in good standing since 2018 | 56 |
| 16. | Letter from Jessica Swanson of Crowe TRUSTA regarding Respondent's federal and Hawaii income tax payments in recent years and estimated tax payments to be paid for tax year 2024 per extension filed, showing growth of Respondent's investments in Hawaii and substantial contribution to US and local economy | 57 |
| 17. | Proof of Respondent's real estate ownership in Hawaii, including his primary residence located at 5403 Kalanianaole Hwy., Honolulu, HI 96821 | 58-116 |
| 18. | Photos of burial site Respondent acquired for himself and his family in Hawaii, showing decoration with patriotic motifs and inscriptions that pay homage to American values, and confirming his wish to rest in peace in Hawaii forever upon passage and he is no flight risk | 117-131 |
| 19. | Police Certificate showing Respondent has no criminal record in China | 132-136 |
| 20. | eCrim Certified Record showing that Respondent has no criminal record in Hawaii | 137 |
| 21. | Declaration of Tony Wang, real estate agent of Respondent, attesting to Respondent's positive contribution to the local community by real estate investments and substantial real estate investments made in Hawaii | 138-139 |

Date:   July 1, 2025                    Respectfully submitted,

                                        /s/ Na Lan
                                        NA LAN, Esq.
                                        EOIR No.: MM481518
                                        nl@hawaiilawyer.com

                                        1003 Bishop Street, Suite 1600
                                        Honolulu, HI 96813
                                        www.hawaiilawyer.com
                                        Telephone: (808) 531-8031
                                        Facsimile:  (808) 533-2242

EOIR – 4 of 5

3

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the following (with attachments as relevant) was served upon opposing counsel as follow:

- Respondent's Witness List and Evidentiary Submission in support of Custody Redetermination

<u>Service:</u>

☒ ECAS – both parties participate in ECAS, so no separate service was completed
☐ Hand delivery
☐ Overnight Priority Mail
☐ Non-priority Mail
☐ Courier Service
☐ ICE e-Service online system
☐ Electronic Mail

<u>Address:</u>

Office of the Principal Legal Advisor
300 Ala Moana Blvd., Ste. 7-220
Honolulu, HI 96850

Date:   July 1, 2025

/s/ Na Lan
_____
NA LAN, Esq.
EOIR No.: MM481518
nl@hawaiilawyer.com

1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

Tab 3

**DAMON KEY LEONG KUPCHAK HASTERT**                                         **DETAINED**
**Attorneys at Law**
**A Law Corporation**

NA LAN
nl@hawaiilawyer.com
1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

**KURZBAN KURZBAN TETZELI & PRATT, P.A.**
EDWARD F. RAMOS
eramos@kktplaw.com
JOHN P. PRATT
jpratt@kktplaw.com
KEVIN A. GREGG
Kgregg@kktplaw.com
131 Madeira Avenue
Coral Gables, Florida 33134
Telephone: (305) 444-0060
Facsimile: (305) 444-3503

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HONOLULU IMMIGRATION COURT**

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming Wang,<br><br>    Respondent | **File No.: A219-032-414**<br><br>**In Custody Redetermination Proceedings** |
| **Immigration Judge:**<br>The Hon. Robin Feder | **Hearing:**<br>July 2, 2025 at 9:00 a.m.<br>300 Ala Moana Blvd., RM 8-112<br>Honolulu, HI 96850 |

**RESPONDENT'S MEMORANDUM IN SUPPORT OF CUSTODY**
**REDETERMINATION**

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HONOLULU IMMIGRATION COURT**

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming Wang,<br><br>    Respondent | **File No.: A219-032-414**<br><br>**In Custody Redetermination Proceedings** |

**RESPONDENT'S MEMORANDUM IN SUPPORT OF**
**CUSTODY REDETERMINATION**

COMES NOW Respondent Chunming Wang ("Mr. Wang" or "Respondent"), by and through his undersigned counsel, and files this Memorandum in support of Custody Redetermination, pursuant to INA § 236(a)(2) and 8 C.F.R. §§ 1003.19(b) & (c)(1). Respondent will concurrently file an evidentiary submission establishing his bond eligibility. In support of Respondent's request for release from detention, Respondent states as follows:

**I.     INTRODUCTION**

1.     Mr. Wang is a 76-year-old, respected, successful, retired businessman who has lived in Honolulu, Hawaii for about seven years. He has never been convicted of or arrested for any crime anywhere in the world. *See* Tabs 19-20. He is a contributing member of the community and a valuable participant in Hawaii's economy who has made substantial real estate investments in Hawaii and. *See* Tabs 7 and 17. He has been embraced by Hawaii's business community and committed his time, energy and support to mentor young entrepreneurs and help others in the community.

2.     Mr. Wang's daughter Yunlu Wang ("Yunlu"), son-in-law Eric Tapio ("Eric"), and his two grandchildren are U.S. citizens currently residing in California. In addition, Mr. Wang's minor son, Rongzheng Wang ("Joey"), was born with congenital heart disease and requires

periodic medical care. *See* Tab 12. Joey is attending a private middle school in Honolulu in F-1 student status. Mr. Wang is Joey's sole custodian since his divorce with Joey's mother in June 2024. He is a good and responsible single parent devoted to the best interest of his child. In October 2018, Mr. Wang's U.S.-citizen daughter Yunlu filed a Form I-130 petition seeking to classify Mr. Wang as her parent, and USCIS approved the I-130 petition on September 16, 2019. *See* Tab 2. A big factor leading to his decision to immigrate to US and settle down in Hawaii was for Joey to receive better education and medical care.

3.      On the same day Mr. Wang's daughter filed the I-130 petition, Mr. Wang concurrently filed an application for adjustment of status. Although his I-485 application was denied by USCIS on May 30, 2025, Mr. Wang intends to renew his adjustment of status application before the immigration judge. Mr. Wang also has a well-founded fear of returning to China and will pursue asylum, withholding of removal and protection under Convention against Torture in removal proceedings.

4.      Mr. Wang suffers from a litany of medical conditions that make his continued detention potentially life-threatening, including brain tumor probably meningioma s/p gamma knife treatment, severe obstructive sleep apnea, permanent atrial fibrillation, elevated CEA (carcinoembryonic antigen), COPD (chronic obstructive pulmonary disease) emphysema, and Barrett's esophagus. *See* Tabs 5-6. Mr. Wang's primary care physician has expressly warned that:

> Patients with severe obstructive sleep apnea are instructed to use CPAP every night. It is because without CPAP in some instances patients may die during their sleep from Cardiopulmonary causes. *See* Tab 5.

Mr. Wang's pulmonologist likewise warned that:

> The risk of him not using his CPAP might be worsening daytime fatigue and sleepiness poorly controlled hypertension risk of stroke or other adverse effects. I strongly recommended he be allowed to have access to his CPAP device for nightly use. *See* Tab 6.

If Mr. Wang does not have full access to properly use CPAP machine on daily basis, he might have a heart attack or stroke or die in his sleep. Mr. Wang's health has regressed during his time in immigration detention. He has missed doctor's appointments and periodic MRI monitoring.

5.　　Mr. Wang has maintained a primary residence in Honolulu, HI. Before his detention, he resided with his son Joey at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. DHS knew he resided there. Mr. Wang did not try to abscond. If released from detention, Mr. Wang will return there and keep taking care of Joey, dropping him off and picking him up from school every day and timely taking Joey to all his doctor's appointments like he did before.

6.　　Mr. Wang is not a danger to the community. He has no criminal record anywhere in the world, and has peacefully and lawfully lived in Honolulu, HI for about seven years before ICE took him into custody on the same day ICE notified him of denial of I-485. DHS has charged Mr. Wang as inadmissible solely under INA § 212(a)(7)(A)(i)(I) as an immigrant who, at the time of application for admission, lacked a valid immigrant visa or other entry document "as required under the regulations issued ... under INA § 211(a)." Mr. Wang has concurrently filed a motion to terminate his removal proceedings on the basis that this ground of inadmissibility does not apply to him. Even if the charge is sustained, it does not evince dangerousness or a flight risk. Mr. Wang also has a pending habeas petition in federal court where he will keep challenging ICE's lack of authority and noncompliance with immigration law to detain him as an "arriving alien".

7.　　Mr. Wang poses no danger to any person or property, and he is not a flight risk. He is a medically-vulnerable retired businessman with U.S. citizen family. He is a well-respected investor with close ties with the local business community. He would lose his substantial real estate investments in Hawaii and his opportunity to renew his Form I-485 petition before an immigration judge and pursue asylum and related relief and protection in removal proceedings if he absconds. It is his wish to rest in peace in Hawaii forever upon passage, as he has purchased

and arranged for burial site in Hawaii for himself and his family.

8.    Mr. Wang poses no threat to the US national security.  He has deep respect to American values and firmly believes in democracy.  He has genuine love for the United States, Hawaii and its people.  Though at one time, he was forced by the Chinese government to be a Communist Party member in a failed attempt to commandeer his company, otherwise his person, his company and its 7,000 employees' jobs would be at great risk, there was no meaningful participation by Mr. Wang. He has publicly espoused principles of democracy, capitalism, anti-authoritarianism, and the rule of law, in ideological opposition to the central tenets of communism in China. He formally applied to terminate his membership with the Chinese Communist Party in November of 2021 and received confirmation on the termination in May of 2022.  He did not do so earlier because he has always considered his membership involuntary, and believed that his relocation to American and complete non-involvement with the Chinese Communist Party made the matter moot.

9.    Mr. Wang respectfully requests that the Court re-determine his custody.

## II.    MR. WANG POSES NO DANGER TO THE COMMUNITY, NO THREAT TO NATIONAL SECURITY, AND IS NOT A FLIGHT RISK

10.    An immigration judge should order a noncitizen released on bond unless there is a finding that the individual is a threat to national security, a danger to the community, likely to abscond, or a flight risk.  *See Matter of Patel*, 15 I&N Dec. 666 (BIA 1976); *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).  If a court determines that an individual is not a danger to the community or a national security threat, the court should determine an amount of bond sufficient to ensure the noncitizen's attendance at future immigration hearings.  *See Urena*, 25 I&N Dec. at 142.  In considering whether a noncitizen is eligible for bond, a court must consider all evidence in totality, and may look to a number of factors.  *See Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA

2006).

**A.      Mr. Wang poses no danger to the community and no threat to national security.**

11.     Mr. Wang does not have any criminal convictions or arrests anywhere in the world. *See* Tabs 19-20.  During his time in the United States, he has never been arrested, nor has he behaved in a manner that gives cause to believe he is dangerous.  "The purpose behind detaining criminal aliens is to ensure their appearance at removal proceedings and to prevent them from engaging in further criminal activity."  *Matter of Siniauskas*, 27 I&N Dec. 207, 208 (BIA 2018). This concern does not exist here.  The Court should grant a bond.

12.     For example, Mr. Wang's case is nothing like the respondent in *Siniauskas*, who had "three convictions for driving under the influence between 2006 and 2007," and an arrest "for a fourth offense in 2017." *Id.*  Nor is his case similar to the facts of the BIA's recent bond decision *Matter of Choc-Tut*, where the respondent had two recent DUI arrests with blood alcohol levels over double the legal limit, and other driving arrests.  *See* 29 I&N Dec. 48 (BIA 2025).  Again, Mr. Wang does not have any arrests in the U.S., much less DUIs.

13.     As the declarations of his friends and business associates, the handwritten letter from his son, and other record evidence shows, Mr. Wang has good moral character, loves his family, genuinely cares and helps others, and supports his community.  *See* Tabs 7–11 and 13.  He is in no way a national security risk or danger to the community.  He has peacefully and lawfully lived in Honolulu, Hawaii for about seven years. He is a well-respected investor with close ties to the Hawaii business community.

**B.      Mr. Wang is not a flight risk, and meets the relevant *Guerra* criteria considered for release from immigration detention**

14.     A court generally considers the following non-exhaustive criteria when determining an amount of bond upon which to release a non-citizen from immigration detention:

(1) whether the applicant has a fixed address in the United States; (2) length of residence in the United States; (3) family ties in the United States; (4) record of appearances in court; (5) employment history; (6) criminal record, including the extensiveness of criminal activity, the recent nature of such activity and the seriousness of the offenses; (7) pending criminal charges; (8) history of immigration violations; (9) attempts to flee prosecution or otherwise escape from authorities; (10) manner of entry; (11) membership in community organizations; and (12) participation in subversive activities. *See Guerra*, 24 I&N Dec. at 40; *Patel*, 15 I&N Dec. 666; *Matter of San Martin*, 15 I&N Dec. 167 (BIA 1974). Mr. Wang meets these criterion.

i.      Mr. Wang has a fixed address in the United States

15.     If released from immigration detention, Mr. Wang will return to his primary residence at 5403 Kalanianaole Highway, Honolulu, Hawaii 96821 to reside with his son Joey. The residence is owned by Mr. Wang via his business entity, which entered into a recorded lease with him as an individual.

16.     Mr. Wang lives in Honolulu because his medical doctors operate out of Honolulu and the surrounding area. He does not intend to leave; indeed, absconding puts his brain tumor, cardiopulmonary and other treatments at risk.

17.     Mr. Wang is a divorced single father raising his minor son Joey on his own, with sole custody. See Tabs 7, 9, and 13-14. Mr. Wang also lives in Honolulu because Joey's cardiologist operates out of Honolulu. *See* Tab 12. Joey was born with congenital heart disease. *See id*. Joey had a heart surgery at the age of three but it was not successful. *See id*. Joey needs annual check-ups for his heart and it still threatens his health and well-being any time. *See id*. Mr. Wang absconding would also put Joey's care and heart treatments at risk.

18.     DHS has known that Mr. Wang resides at this address for many months. Mr. Wang did not provide DHS any reason to believe he would abscond before his detention.

19.     Additionally, should Mr. Wang move (which he does not intend), he will update his address with the Court and USCIS.  Should he fail to do so, he risks losing his opportunity to renew his Form I-485 petition before an immigration judge and pursue asylum and related relief and protection in removal proceedings.  Mr. Wang will not abscond from his fixed address in Honolulu.

20.     Mr. Wang has a local sponsor, Loren Graham, who will ensure Mr. Wang will timely attends all future hearings in his removal proceeding.

        ii.     <u>Mr. Wang is a respected retired businessman with multiple ties to the United States.</u>

21.     Mr. Wang's daughter Yunlu, his son-in-law Eric, his two grandchildren, and his friends and business associates are U.S. citizens residing in the United States.  Yunlu and Mr. Wang's friends and business associates have submitted sworn declarations in support of his release from immigration detention.  *See* Tabs 7-10 and 13.

22.     Mr. Wang is a contributing member of the community and a valuable participant in Hawaii's economy who has made substantial real estate investments in.  He devotes time, energy and support to mentoring young entrepreneurs and helps others around him.  *See* Tabs 7 and 17.

23.     Mr. Wang has a strong love for the United States and commitment to democracy and American values.  *See* Tabs 7, 9-10, and 13.  In fact, in 2010, Mr. Wang demonstrated his love for democracy by constructing a public monument ("Democracy Wall") at the headquarters of his company in China, Sichuan Guodong Construction Co., Ltd., bearing  his name and that of his company, which monument included a poem authored by Mr. Wang and decried personality cults, authoritarian violence, and called for  democracy and the rule of law.  The Communist local government demolished the Democracy Wall on September 26, 2019, because the message of Democracy Wall was an anathema to the Party line.

24.     Mr. Wang has purchased burial lot for himself and his family in Honolulu and it is his wish to rest in Hawaii forever upon his passing.  *See* Tabs 7-8 and 18.  The structures on the burial plot are decorated with patriotic motifs and inscriptions that pay homage to presidents George Washington, Abraham Lincoln, and American values.  *See* Tab 18.  Mr. Wang has offered space within the burial plot to other outstanding individuals in Honolulu at no cost.  *See* Tab 8.

25.     During his time in detention, his family, friends, and business associates have submitted sworn declarations attesting to Mr. Wang's excellent moral character, non-danger, and non-flight risk.  *See* Tabs 7-10 and 13.  As just some examples from these detailed declarations:

- Mr. Wang is described by his 13-year-old son, Joey, as:

  "My dad always taught me to be a kind-hearted person that always tells the truth and become a honorable man in society. Even when treated me strictly, I am always thankful of him … My dad is a very righteous person and would not do anything bad."  *See* Tab 11.

- Mr. Wang is described by his real estate broker, property manager, and long-term friend, Loren Graham, as:

  "He has visited my home on several occasions and even joined my parents for lunch and dinner at their home. He was very well liked by everyone in my family. Mr. Wang treated me and my loved ones with warmth and respect. …He has expressed a sincere love for the United States and for Hawaii in particular, and he has frequently spoken about his desire to give back … I truly believe his heart is in the right place."  *See* Tab 7.

- Mr. Wang is described by Prof. Kate Zhou, a Princeton Ph.D and Political Science Professor at University of Hawaii at Manoa, as:

  "During our friendship, he has consistently shown: Deep respect for American values. Mr. Wang has demonstrated unwavering support for American principles, including the rule of law and the Declaration of Independence … Mr. Wang has demonstrated significant community commitment in Hawaii: He has made substantial investments in Honolulu, Kauai, and Maui. He has expressed strong interest in supporting rural communities on Big Island, HI. …

  Based on my personal knowledge and extended interactions with Mr. Wang, I can confidently state that: (i) His presence in Hawaii is peaceful and beneficial to the

local community; (ii) He has demonstrated a genuine love for Hawaii and its people; (iii) He is committed to remaining in Hawaii and contributing positively to the community; (iv) He poses no risk to public safety or security; (v) His intentions are entirely constructive and aligned with American values.  I believe Mr. Wang will continue to be a valuable and contributing member of our local Hawaii community and the United States."  *See* Tab 10.

- Mr. Wang is described by his daughter, Yunlu, as:

"My father is really excellent and great.  When he was young, because my grandpa was a Kuomintang officer, he and his family suffered from all kinds of inhumane persecution during the Cultural Revolution in China.  Not being allowed to get decent education was the highest punishment for him.

My father was the village head after she [sic] married my mother.  I went to a village meeting with him, and the people in the village tied up my father, beat him, and tortured him, because he didn't allow the villagers to destroy village's belongings.  The villagers tortured him in every way, saying he was not only a four-class element, but also being married to my mother.

I still remember each time I was shivering to hold his paper note book where he kept all the village records.  Despite all the hardships my father had gone through, he still thought of all kinds of ways to help the villagers.  He taught the villagers to grow tomatoes and mushrooms, make clothes hangers, and make bamboo curtains to sell far away from the village.  You might not know, the people in my village had never seen nor eaten a tomato before in those days.  In order for the villagers to use electricity for the first time in their lives, my father was almost killed.  You can see all the scars all over his body.

My father is a business genius.  He can see all the business opportunities and work through them.  Even though he has been subjected to various persecutions throughout his life, he has made tremendous contributions to his surroundings and society.  He has never persecuted, treated unfairly, or punished anyone.  He has helped countless employees and some employees' families worked for his business for three generations.  As such, it's so hard for me to imagine that my father is being treated so unfairly, unjustified in the United States."  *See* Tab 13.

26.    Loren Graham, a U.S. citizen and a friend and business associate of Mr. Wang, has sworn under penalty of perjury that—in the extremely unlikely event it is needed—he will be responsible for Mr. Wang appearing at all future hearings.  Mr. Wang is blessed to have a family who loves him and business associates who care about him.  They all miss him dearly.  He is not

a danger.   He will not abscond.

       iii.    <u>Mr. Wang has no convictions or arrests in the United States or abroad, has not been charged with a ground of inadmissibility evincing dangerousness, and already has significant financial motivations for attending non-detained removal hearings</u>

27.    Mr. Wang has no criminal convictions or arrests anywhere in the world.  *See* Tabs 19-20.   He has never been arrested in the United States.

28.    DHS charged Mr. Wang as inadmissible solely under INA § 212(a)(7)(A)(i)(I), a charge which—in addition to being unsustainable—is not a charge that indicates dangerousness or flight risk.

29.    To the contrary, Mr. Wang <u>must</u> remain in the United States to renew his Form I-485 petition before an immigration judge and pursue asylum and related relief and protection, <u>must</u> keep the U.S. government informed of any address changes, and <u>must</u> attend all future removal hearings, or Mr. Wang risks losing his substantial real estate investments in Hawaii.

30.    Mr. Wang meets the enumerated criteria for release from immigration detention and has numerous equities which warrant the granting of bond.

31.    To the extent that the Court believes a bond appropriate, due to the non-criminal nature of Mr. Wang's detention and his demonstrated good moral character, Mr. Wang respectfully requests a $1,500 bond.  Mr. Wang's local sponsor Loren Graham has the capacity and agrees to post the bond set by the Court.  *See* Tabs 7 and 15-17.

## III.    CONCLUSION

Under *Matter of Guerra*, other binding precedent, and the pertinent regulations, Mr. Wang is eligible for release from immigration custody pending final adjudication of his case.   The evidence submitted here, as well as potential additional evidence, shows that he poses no danger to the community, no threat to national security, and is not a flight risk.

WHEREFORE, Respondent respectfully requests that the Court find him merits bond, and order him RELEASED from immigration detention pending final adjudication of his removal proceedings, once the bond is posted on his behalf.

Date:   July 1, 2025                          Respectfully submitted,


/s/ Na Lan
NA LAN, Esq.
EOIR No.: MM481518
nl@hawaiilawyer.com

1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the following (with attachments as relevant) was served upon opposing counsel as follow:

- Respondent's Memorandum in support of Custody Redetermination

**Service:**

☒ ECAS – both parties participate in ECAS, so no separate service was completed
☐ Hand delivery
☐ Overnight Priority Mail
☐ Non-priority Mail
☐ Courier Service
☐ ICE e-Service online system
☐ Electronic Mail

**Address:**

Office of the Principal Legal Advisor
595 Ala Moana Blvd.
Honolulu, HI 96813

Date:   July 1, 2025

/s/ Na Lan
_____
NA LAN, Esq.
EOIR No.: MM481518
nl@hawaiilawyer.com

1003 Bishop Street, Suite 1600
Honolulu, HI 96813
www.hawaiilawyer.com
Telephone: (808) 531-8031
Facsimile:  (808) 533-2242

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HONOLULU IMMIGRATION COURT**

| IN THE MATTER OF: | **File No.: A219-032-414** |
|---|---|
| Chunming Wang, | |
| Respondent | **In Custody Redetermination Proceedings** |

### ORDER OF THE IMMIGRATION JUDGE

Upon consideration of Respondent's Motion and submissions for Custody Redetermination Hearing, it is HEREBY ORDERED that the Motion be [  ] GRANTED [  ] DENIED because:

[ ] Good Cause has been established for the motion
[ ] The Applicant does not oppose the motion
[ ] A response to the motion has not been filed with the Court
[ ] The Court agrees with the reasons stated in the opposition to the motion
[ ] DHS does not oppose the motion
[ ] The motion is untimely per _____.
[ ] Other:_____.

Deadlines:

[ ] The application(s) for relief must be filed by _____.
[ ] The Applicant must comply with DHS biometrics instructions by_____.

_____                        _____
Date                                          Immigration Judge

**Certificate of Service**

This document was served by: [ ] Mail  [ ] Personal Service
To: [ ] Alien   [ ] Alien c/o Custodial Officer      [ ] Alien's Atty/Rep   [ ] DHS

Date_____                          By: Court Staff _____

EOIR – 14 of 14

Tab 4

DETAINED

TOGTOKHBAYAR GANZORIG
Deputy Chief Counsel
JOHN R. ODLE
Assistant Chief Counsel
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security
300 Ala Moana Boulevard, Suite 7-220
Honolulu, Hawaii 96850
(808) 529-1975

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## HONOLULU, HI

|  |  |
|---|---|
| In the Matter of: | )<br>)<br>) |
| Chunming Wang | )<br>) File No.:  A219-032-414<br>) |
| In removal proceedings | )<br>)<br>) |

Immigration Judge: Feder                    Next Hearing: Bond on 7/2/2025

## DEPARTMENT OF HOMELAND SECURITY'S POSITION STATEMENT ON BOND ELIGIBILITY

The Department of Homeland Security (DHS) submits this position statement regarding the respondent's eligibility for bond. The respondent is not eligible for bond as he is an arriving alien. 8 C.F.R. § 1003.19(h)(2)(i)(B).

### PROCEDURAL BACKGROUND

On June 4, 2025, DHS filed a Form I-862, *Notice to Appear* (NTA), with the Honolulu Immigration Court, placing the respondent in removal proceeding pursuant to section 240 of the

1                                        A219-032-414

Immigration and Nationality Act (INA). The respondent was classified as an arriving alien and charged as removable under INA section 212(a)(7)(A)(i)(I).

On June 18, 2025, the respondent appeared before the Honolulu Immigration Court for an initial master-calendar hearing. The respondent, through counsel, made an oral motion to terminate removal proceedings on the grounds that he was improperly charged as inadmissible under INA section 212. The respondent also objected to the DHS's classification of the respondent as an arriving alien on the NTA because it affected his ability to seek bond before the Immigration Judge.[1] On June 25, 2025, the respondent requested a bond hearing.

## FACTS

The respondent is a native and citizen of the People's Republic of China. On July 3, 2018, the respondent entered the United States as a B2 nonimmigrant. On October 12, 2018, the respondent filed a Form I-485, *Application to Register Residence or Adjust Status*, with the United States Citizenship and Immigration Services (USCIS) under INA section 245, based on the respondent being the principal beneficiary of a family-based immigrant petition.

On October 12, 2018, the respondent filed a Form I-131, *Application for Travel Document*, with USCIS requesting advance parole. On March 22, USCIS approved the respondent's application for advance parole, which was valid from March 22, 2019 until March 21, 2020.

While the respondent's Form I-485 was still pending with the United States, the respondent departed the United States. On January 3, 2020, the respondent arrived in and was

---

[1] The respondent filed a Petition for Writ of Habeas Corpus and Amended Petition for Writ of Habeas Corpus also arguing that he has been incorrectly classified as an arriving alien on the NTA before the District of Hawaii (1:25-cv-00231-JAO-RT).

paroled into the United States for the purpose: "DA I-152 Adjustment Applicant" until

December 31, 2020.[2] On May 30, 2025, USCIS denied the respondent's Form I-485.

## ARGUMENT

The respondent's request for redetermination of his conditions of custody should be

denied as the respondent is an arriving alien. An immigration judge may not redetermine

conditions of custody imposed by DHS with respect to "[a]rriving aliens in removal proceedings,

including aliens paroled after arrival pursuant to section 212(d)(5) of the Act." 8 C.F.R. §

1003.19(h)(2)(i)(B); *see also Matter of M-S-*, 27 I&N Dec. 509, 513 (A.G. 2019) ("Section

1003.19 . . . expressly limits the availability of bond for certain enumerated classes of aliens.

One of those classes is '[a]rriving aliens,' which includes aliens 'attempting to come into the

United States at a port-of-entry[.]'" (citations omitted)); *Matter of Oseiwusu*, 22 I&N Dec. 19,

19–20 (BIA 1998) (concluding that consideration of a bond for an arriving alien who was

paroled into the United States pursuant to a grant of advance parole was improper).

An arriving alien is an applicant for admission coming into the United States at a port of

entry. 8 C.F.R. § 1001.1(q). An arriving alien remains an arriving alien even if paroled into the

United States pursuant to INA section 212(d)(5)(A). *Id.* INA section 212(d)(5)(A) allows DHS to

temporarily parole into the United States on a case-by-case basis for urgent humanitarian reasons

or significant public benefit "any alien applying for admission to the United States . . . ." An

alien paroled under INA section 212(d)(5) is not considered to have been admitted. INA §

101(a)(13)(B).

Here, the respondent was paroled into the United States on January 3, 2020 pursuant to

advance parole. The respondent was paroled into the United States under INA section

---

[2] The respondent was also paroled into the United States on July 14, 2019 as an adjustment applicant until July 13, 2020. Exh. 2, p. 3.

212(d)(5)(A). *Matter of G-A-C-*, 22 I&N Dec. 83, 89 (BIA 1998) ("Advance parole is a

procedure whose authority is derived from section 212(d)(5) of the Act."). "As its name implies,

'advance parole' is simply parole that has been requested and authorized in advance based on the

expectation that the alien will be presenting himself for inspection without a valid visa in the

future." *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 777 (BIA 2012); *see also Matter

of G-A-C-*, 22 I&N Dec. at 88 n.3. When the respondent presented himself for inspection at a

port-of-entry on January 3, 2020 for entry into the United States to pursue his pending

adjustment of status application before USCIS, he was an applicant for admission. The

respondent had already requested parole in advance and the respondent was paroled into the

United States at the port-of-entry to pursue that adjustment of status application. Therefore, as

the respondent was an applicant for admission coming into the United States at a port of entry,

the respondent was an arriving alien. The respondent remained an arriving alien even when he

was paroled into the United States pursuant to INA section 212(d)(5)(A). 8 C.F.R. § 1001.1(q).

Furthermore, the respondent's situation of being an applicant for adjustment of status not

in removal proceedings at the time who travels outside the United States pursuant to a grant of

advance parole is covered by regulation. 8 C.F.R. § 245.2(a)(4)(ii)(B) states, in relevant part: "If

the adjustment of status application of such individual is subsequently denied, he or she **will be

treated as an applicant for admission**, and subject to the provisions of section 212 and 235 of

the Act."[3] (emphasis added). When the respondent's adjustment of status application was denied

---

[3] The respondent would not be subject to expedited removal proceedings pursuant to regulation. An arriving alien who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole, will not be treated as arriving alien under INA section 235(b)(1)(A)(i). 8 C.F.R. § 1001.1(q). In other words, an alien cannot be placed into expedited removal for the sole reason that he was paroled into the United States pursuant to advance parole. *See* Amendment of the Regulatory Definition of Arriving Alien, 63 Fed. Reg. 19,382, 19,383 (Apr. 20, 1998) (Interim Rule) (Aliens who meets the exceptions "will not be subject to expedited removal when their parole is terminated"); *Bona v. Gonzales*, 425 F.3d 663, 667 (9th Cir. 2005) (determining that the regulation under 8 C.F.R. § 1.1(q) creates two exceptions that exempt an alien from the definition of arriving alien "*for the purpose* of excluding them from expedited removal proceedings" under INA section 235(b)). As the respondent is not in expedited

by USCIS on May 30, 2025, the respondent is treated as an applicant for admission who is subject to the provisions of INA section 212 by operation of regulation. 8 C.F.R. § 245.2(a)(4)(ii)(B).

Additionally, the respondent remains an arriving alien even after his parole into the United States was terminated. An arriving alien remains an arriving alien even after parole pursuant to INA section 212(d)(5) is terminated or revoked. 8 C.F.R. § 1001.1(q); *see also* INA § 212(d)(5)(A) (after the purposes of parole have been served, the alien's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States"). Thus, the respondent remains an arriving alien as his parole has been terminated and is dealt with as applicant for admission who coming into the United States at a port of entry.

Finally, the respondent has been properly charged as inadmissible in the NTA. The Board has stated that "it is well settled that an alien who leaves the United States and returns under a grant of advance parole is subject to the grounds of inadmissibility once parole is terminated, even if he had been 'deportable' rather than 'inadmissible' before the trip's commencement." *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. at 777 (citing *See Matter of G-A-C-*, 22 I&N Dec. at 89-91; *Matter of Torres*, 19 I&N Dec. 371, 373 (BIA 1986); *see also Assa'ad v. U.S. Att'y Gen.*, 332 F.3d 1321, 1326-27 (11th Cir. 2003); *Dimenski v. INS*, 275 F.3d 574, 577-78 (7th Cir. 2001); 8 C.F.R. § 245.2(a)(4)(ii)(B)).

## CONCLUSION

Based on the above, the respondent is an arriving alien as he is applicant for admission who coming into the United States at a port of entry. The respondent was paroled into the United

---

removal proceedings, the exceptions do not apply to him and do not affect his status as an applicant for admission. *See* 63 Fed. Reg. at 19383 ("This exception does not alter the legal status of these parolees; these paroled aliens remain applicants for admission as in the past.").

States and after his application for adjustment of status was denied and his parole was

terminated, he is treated an applicant for admission. As the respondent is an arriving alien, an

immigration judge may not redetermine conditions of custody imposed by DHS. 8 C.F.R. §

1003.19(h)(2)(i)(B).

John Odle
Assistant Chief Counsel

A219-032-414

Chunming Wang
A219-032-414

## **CERTIFICATE OF SERVICE**

On July 1, 2025, I, John Odle, Assistant Chief Counsel, served a copy of this DHS Position
Statement to the Immigration Judge and any attached pages through the EOIR Courts and
Appeals System (ECAS), which will automatically send service notifications to both parties that
a new document has been filed.

_____
(signature)

$\frac{7}{1}$/2025
(date)

Tab 5

```
                          IMMIGRATION COURT
                   300 ALA MOANA BLVD., RM 8-112
                        HONOLULU, HI  96850




      Kurzban Kurzban Tetzeli & Pratt, P.A.
      Gregg, Kevin Arthur
      131 Madeira Avenue
      Coral Gables, FL  33134


      FILE: A219-032-414

      RE:  WANG, CHUNMING


      NOTICE OF CUSTODY REDETERMINATION HEARING IN IMMIGRATION PROCEEDINGS


      PLEASE TAKE NOTE THAT THE ABOVE CAPTIONED CASE HAS BEEN
      SCHEDULED/RESCHEDULED FOR A CUSTODY REDETERMINATION HEARING BEFORE THE
      IMMIGRATION COURT ON Jul 2, 2025 AT 08:30 A.M. AT THE FOLLOWING ADDRESS:

                   300 ALA MOANA BLVD., RM 8-112
                   HONOLULU, HI  96850

      YOU MAY BE REPRESENTED IN THIS PROCEEDING, AT NO EXPENSE TO THE GOVERNMENT, BY
      AN ATTORNEY OR OTHER INDIVIDUAL AUTHORIZED AND QUALIFIED TO REPRESENT PERSONS
      BEFORE AN IMMIGRATION COURT.  IF YOU WISH TO BE REPRESENTED, YOUR ATTORNEY
      OR REPRESENTATIVE SHOULD APPEAR WITH YOU AT THIS HEARING.




      _____
                          CERTIFICATION OF SERVICE
      THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [E]
      TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [e ] ALIEN's ATT/REP  [e ] DHS
      DATE:  ___7/1/25_____    BY:  COURT STAFF _____ck_____
          Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
      _____
```

                                                                        U7

Tab 6

```
                    IMMIGRATION COURT
             300 ALA MOANA BLVD., RM 8-112
                    HONOLULU, HI  96850




   Kurzban Kurzban Tetzeli & Pratt, P.A.
   Gregg, Kevin Arthur
   131 Madeira Avenue
   Coral Gables, FL  33134


   FILE: A219-032-414

   RE:  WANG, CHUNMING
```

**NOTICE OF CUSTODY REDETERMINATION HEARING IN IMMIGRATION PROCEEDINGS**


PLEASE TAKE NOTE THAT THE ABOVE CAPTIONED CASE HAS BEEN
**SCHEDULED**/RESCHEDULED **FOR A CUSTODY REDETERMINATION HEARING** BEFORE THE
IMMIGRATION COURT ON **Jul 2, 2025 AT 09:00 A.M.** AT THE FOLLOWING ADDRESS:

```
             300 ALA MOANA BLVD., RM 8-112
                    HONOLULU, HI  96850
```

YOU MAY BE REPRESENTED IN THIS PROCEEDING, AT NO EXPENSE TO THE GOVERNMENT, BY
AN ATTORNEY OR OTHER INDIVIDUAL AUTHORIZED AND QUALIFIED TO REPRESENT PERSONS
BEFORE AN IMMIGRATION COURT.  IF YOU WISH TO BE REPRESENTED, YOUR ATTORNEY
OR REPRESENTATIVE SHOULD APPEAR WITH YOU AT THIS HEARING.

_____
                    CERTIFICATION OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL [M]  PERSONAL SERVICE [P]  ELECTRONIC SERVICE [**E**]
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [**E**] ALIEN's ATT/REP  [**E**] DHS
DATE:  ___**6/26/25**_____  BY:  COURT STAFF _____**lkm**_____
      Attachments:  [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other
_____

                                                              U7

Tab 7

**Kurzban, Kurzban,**                                         DETAINED
**Tetzeli & Pratt, P.A.**
131 Madeira Ave.
Coral Gables, Florida 33134

Edward F. Ramos | eramos@kktplaw.com
Kevin A. Gregg | kgregg@kktplaw.com

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## HAWAII IMMIGRATION COURT

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming WANG,<br><br>Respondent | **File No.: A219-032-414**<br><br>**In Bond Proceedings** |

**Immigration Judge:**                    **Next Hearing (Master):**
The Hon. Clarence M. Wagner, Jr.          July 10, 2025 at 1:00pm

## RESPONDENT'S BRIEF IN SUPPORT OF
## BOND ELIGIBILITY

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**HAWAII IMMIGRATION COURT**

| | |
|---|---|
| IN THE MATTER OF:<br><br>Chunming WANG,<br><br>      Respondent | **File No.: A219-032-414**<br><br>**In Bond Proceedings** |

### RESPONDENT'S BRIEF IN SUPPORT OF
### BOND ELIGIBILITY

In accordance with the briefing schedule set by the Court at the June 18, 2025 Master Calendar Hearing, Respondent Chunming Wang submits this brief to explain why he has been improperly classified as an "arriving alien," and why the Court therefore has jurisdiction to redetermine Respondent's custody.

### INTRODUCTION

The allegations set forth on the Notice to Appear ("NTA") establish that the Department of Homeland Security was wrong to classify Respondent as an "arriving alien" on the Notice to Appear and in its denial of Respondent's request for release from custody. According to the NTA, Respondent last "entered the United States on January 3, 2020" pursuant to advance parole granted to him prior to his departure. He was then arrested and detained for removal proceedings in June 2025 after the denial of his application for adjustment of status.

Respondent does not fall within the "arriving alien" definition and therefore remains entitled to a bond hearing. The regulations are explicit: 8 C.F.R. §§ 1.2 and 1001.1(q) expressly *exclude* any non-citizen who was "paroled into the United States . . . pursuant to a grant of advance parole." Branding Respondent as "arriving," despite the fact he was inspected and entered the United States years ago, also clashes with Congress's design in the INA, as

overhauled by IIRIRA, which reserves that label—and the extraordinary, no-bond detention it triggers—for people at the border or just across it. Respondent was inspected, granted advance parole, and has lived openly in the U.S. interior for years; stretching the "arriving alien" category to reach him would obliterate the clear border/interior line Congress carefully drew.

For these reasons, the Court should reject the Department's "arriving alien" designation, and rule that Respondent is entitled to a bond hearing.

## STATUTORY AND REGULATORY BACKGROUND

### A.  "Arriving aliens" subject to expedited removal.

Congress set the statutory stage for this issue through its enactment of IIRIRA in 1996. As relevant here, Congress substantially modified Section 235 of the INA regarding the inspection, detention, and removal of noncitizens applying for admission to the United States. As part of this overhaul, IIRIA enacted INA § 235(b)(1), which governs the detention and removal of noncitizens who are subject to "expedited removal" proceedings.

Broadly speaking, two categories of noncitizens are subject to expedited removal under Section 235(b)(1): (1) "alien[s]…who *[are] arriving* in the United States" and are subject to the inadmissibility grounds at INA § 212(a)(6)(C) or 212(a)(7) (*i.e.*, "arriving aliens"); and (2) certain other individuals who entered the United States recently without inspection, and were not admitted or paroled. *See* INA § 235(b)(1)(A). Section 235(b) renders these two categories of individuals subject to mandatory detention while they are screened for credible fear, and during any proceedings to determine their asylum claim if such a fear is established. *See* INA § 235(b)(1)(B)(ii) (individuals who establish credible fear to an asylum officer "shall be detained for further consideration of the application for asylum"); *id.* § 235(b)(1)(B)(iii)(IV) (individuals seeking review of a negative credible fear determination "shall be detained pending a final

determination of credible fear of persecution and, if found not to have such a fear, until removed").

Some arriving aliens subject to expedited removal nevertheless end up in Section 240 proceedings. This may occur if the Department exercises its discretionary authority to institute Section 240 proceedings even if the noncitizen qualified for expedited removal, *see Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 521-23 (BIA 2011), or if the noncitizen establishes a credible fear of persecution, in which case governing regulations trigger removal proceedings under Section 240, *see* 8 C.F.R. § 208.30(f). Crucially, the Attorney General has held that when a noncitizen subject to expedited removal is placed in INA § 240 proceedings, it remains the case that the *detention* provisions of INA § 235(b)(1) continue to govern. *See Matter of M-S-*, 27 I&N Dec. 509, 516 (A.G. 2019). The bond regulations reflect this restriction, as they provide that an "immigration judge may not redetermine conditions of custody" for "[a]rriving aliens in removal proceedings." 8 C.F.R. § 1003.19(h)(2)(i)(B).

**B.  The "arriving alien" definition.**

Despite the importance of the "arriving alien" concept to the IIRIRIA detention and removal framework, the INA does not define who counts as an alien "arriving in the United States." Thus, the legacy Immigration and Naturalization Service promulgated a regulatory definition shortly after IIRIRA's enactment. *See* Inspection and Expedited Removal of Alines, 62 Fed. Reg. 10,312 (Mar. 6, 1997) (Interim Rule) (noting that "[s]everal sections of the statute . . . refer to arriving aliens, even though this term is not defined in [the] statute").

By regulation, the agency initially defined "arriving alien" as follows:

> The term *arriving alien* means an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry, or an alien who is interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless

of the means of transport. *An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act.*

*Id.* at 10,330 (codified at 8 C.F.R. § 1.2(q) (1997)) (emphasis added). This original definition of "arriving alien" thus purported to capture all individuals who were paroled pursuant to INA § 212(d)(5)—full stop.

Shortly thereafter, the agency introduced a key exception to the "arriving alien" definition. Just over a year after the original definition was promulgated, the agency issued a new rulemaking to "chang[e] the regulatory definition of an arriving alien." *See* Amendment of the Regulatory Definition of Arriving Alien, 63 Fed. Reg. 19,382 (Apr. 20, 1998). The rulemaking explained that "[u]nder section 235(b)(1)(A)(i) of the Immigration and Nationality Act (Act) . . . certain arriving aliens are subject to expedited removal procedures." *Id.* The agency recognized that the original definition was expansive, as it "include[d] parolees whose parole is terminated, *without regard . . . to the circumstances under which parole was granted*." *Id.* (emphasis added). The agency noted that this broad definition "encompasses certain groups not best regarded as arriving aliens for purposes of the applicability of expedited removal, such as aliens . . . who departed from and returned to the United States pursuant to advance parole." *Id.* The agency thus amended the regulatory definition of "arriving alien" to *exclude* an "alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States." *Id.* at 19,383-84. Such individuals, the new regulation made clear, "shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act." *Id.*

While the regulatory "arriving alien" definition has been amended several times since, the definition to this day maintains this clear exception for individuals who obtained advance parole while in the United States, and then reentered the United States pursuant to that advance parole. *See* 8 C.F.R. § 1.2; *id.* § 1001.1(q).

## ARGUMENT

The Department asserts, on both the NTA and in its representations at Respondent's prior hearing, that Respondent is an "arriving alien" and therefore ineligible for bond. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (no bond for "[a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act"). But the designation is incorrect, both as a matter of the plain regulatory definition and under the governing statute. Because the Department's claim that Respondent is ineligible for bond depends on the legally erroneous "arriving alien" label, the Court should hold that Respondent is entitled to a bond hearing.

**I.    The regulatory definition of "arriving alien" confirms that Respondent is not one.**

The Court should rule that Respondent falls outside the plain language of the "arriving alien" definition, and therefore is not disqualified from obtaining a custody redetermination from the Court under 8 C.F.R. § 1003.19(h)(2)(i)(B).

As noted above, the regulatory definition of "arriving alien" from April 1998 onward has expressly excluded individuals who obtained an advance parole document prior to departing the United States, and who reentered the United States pursuant to that advance parole. Respondent falls squarely within that exception. Respondent was issued an advance parole document on March 22, 2019 pursuant to a pending application for adjustment of status. He thus "applied for and obtained" an advance parole document "in the United States prior to [his] departure from and return to the United States." 8 C.F.R. § 1001.1(q). He was subsequently "paroled into the United States . . . pursuant to [that] grant of advance parole." *Id.* As a result, Respondent falls outside the ambit of noncitizens who are properly classified as "arriving aliens" under the plain language of the regulation. And that regulatory definition controls, *see Mendez-Garcia v. Lynch*, 840 F.3d 655, 665 (9th Cir. 2016) ("When a statute includes an explicit definition, we must follow

that definition[.]") (alterations and citation omitted), confirming that Respondent is not disqualified from seeking bond.

That conclusion is unaffected by the language at the end of the regulatory definition, which states that a noncitizen who enters on advance parole "will not be treated, solely by reason of that grant of parole, as an arriving alien *under section 235(b)(1)(A)(i) of the Act*." 8 C.F.R. § 1001.1(q). The Department may argue that this language limits the exception's force to blocking the Department from instituting expedited-removal proceedings under INA § 235(b)(1)(A)(i), while still allowing covered noncitizens to be classified as "arriving aliens" for other purposes—most notably 8 C.F.R. § 1003.19(h)(2)(i)(B), which strips immigration judges of jurisdiction over bond proceedings for "arriving aliens." But any such argument is untenable. The regulation at 8 C.F.R. § 1003.19(h)(2)(i)(B) disqualifies "arriving aliens" from bond precisely because INA § 235(b)(1)(A)(i) subjects "alien[s] . . . arriving in the United States" to expedited removal and the mandatory detention that accompanies it. Once 8 C.F.R. § 1001.1(q) takes advance-parole entrants out of "arriving alien" status for INA § 235(b)(1)(A)(i) purposes, the very predicate for the regulatory prohibition on bond disappears; such individuals cannot, as a matter of logic, be treated as "arriving aliens" under § 1003.19(h)(2)(i)(B) or any other regulation that simply implements INA § 235's detention regime.

The regulatory history of the "arriving alien" definition confirms this point. In its initial rulemaking, the agency recognized "that the statute [*i.e.*, IIRIRA] seemed to differentiate more clearly between aliens at ports-of-entry and those encountered elsewhere in the United States." 62 Fed. Reg. at 10,312-13. And in a subsequent rulemaking, the agency recognized that individuals who obtained advance parole were "previously present in the United States (in some cases for long periods)," and were thus not properly grouped in with other individuals arriving at

ports of entry even after "their parole is terminated." 63 Fed. Reg. at 19,382-83. If noncitizens who enter on advance parole are properly exempted from expedited removal, it logically follows that they should be exempted from the detention rules that govern expedited removal. That is especially so given the Attorney General's ruling that a noncitizen's bond eligibility depends on whether they are properly subject to expedited removal *ab initio*—regardless of whether they are subsequently placed in Section 240 proceedings. *See Matter of M-S-*, 27 I&N Dec. 509, 512 (A.G. 2019) (explaining that "Section 235 of the Act expressly provides for the detention of aliens originally placed in expedited removal" and noting that "the Act's implementing regulations assume that aliens in expedited proceedings will be detained").

In sum, because Respondent last entered on advance parole, he is not properly classified as an "arriving alien" under the controlling regulatory definition of that term. As a result, 8 C.F.R. § 1003.19(h)(2)(i)(B) does not deprive the Court of its authority to redetermine Respondent's custody and grant him release on bond.

## II. Treating Respondent as an arriving alien ineligible for bond is *ultra vires* of the INA.

In enacting IIRIRA, Congress drew a clear and deliberate line: the expedited removal provisions apply only to noncitizens who are in the act of "arriving" in the United States—not to those who are already present without having been formally "admitted" or "paroled." See INA § 235(b)(1)(A). Treating Respondent as an "arriving alien" for purposes of detention under Section 235 would subvert that statutory distinction. It would collapse the line Congress drew between two distinct categories: noncitizens arriving at the border, who may be subject to expedited removal and mandatory detention, and noncitizens already living within the country, who remain eligible for bond. That erosion of statutory boundaries cannot be squared with Congress's intent.

The statute's use of the present progressive—"is arriving"—in INA § 235(b)(1) is no accident. "[U]se of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992). And here, that tense choice reflects Congress's intent to capture under the expedited-removal provisions—and its mandatory-detention framework—only noncitizens in the midst of crossing the border. *See Al Otro Lado v. McAleenan*, 394 F. Supp. 3d 1168, 1200 (S.D. Cal. 2019) (explaining that "is arriving" under INA § 235(b)(1) signals "an ongoing process"); *United States v. Jackson*, 480 F.3d 1014, 1018 (9th Cir. 2007) (explaining that Congress's "use of the present tense suggests that statutory element does not apply" to matters that "occurred before the statute's enactment"). To treat an individual like Respondent—who last *arrived* in the United States (under any possible interpretation) years ago—as an individual actively "arriving" in the United States would be to override IIRIRA's clear divide between noncitizens presenting at the border (or who have arrived only recently) and noncitizens who have long resided in the interior. *Accord Bollat Vasquez v. Wolf*, 460 F. Supp. 3d 99, 111 (D. Mass. 2020) ("if apprehended while crossing the border … they are 'arriving' … if apprehended at some point thereafter, they are not").

Indeed, Congress's consistent deployment of the present-participle "arriving" throughout the INA signals a discrete, transitory moment when a noncitizen is physically at—or functionally tethered to—the border, still subject to the government's exceptional "port-of-entry" authority rather than the ordinary domestic regime. Every pertinent INA provision pairs the term with the mechanics of entry inspection. As discussed, INA § 235(b)(1)(A)(i) authorizes expedited removal when an alien "*is arriving* in the United States." Section 232(a) authorizes the detention of "aliens . . . *arriving* at ports" to be detained for inspection by health officials to determine if they carry communicable diseases—including those carried from other countries. Section

212(a)(9) renders inadmissible individuals who are ordered removed following INA § 240 proceedings "initiated *upon* the alien's arrival in the United States." And Section 241(b)(1) describes the removal procedures for "an alien who arrives at the United States and with respect to whom proceedings under section 240 were initiated *at the time of such alien's arrival . . . .*" In each context, "arriving" or "arrival" operates as a temporal hinge: it attaches only while noncitizens are in the act of presenting themselves at the border (or its functional equivalent), and evaporates once they are materially present inside the country. Interpreting the notion of an "arriving alien" more broadly would collapse the border/interior distinction Congress built into the INA and stretch the extraordinary detention tools of § 235(b) far beyond the border-enforcement rationale that justifies them.

Simply put, it is unthinkable that Congress would have intended individuals like Respondent—who traveled pursuant to a grant of advance parole, and have been residing in the United States under color of law based on a pending application for adjustment of status for years—to be grouped in with individuals presenting themselves at the border for the very first time. To treat Respondent as an "arriving alien" ineligible for bond pursuant to INA § 235 would thus be *ultra vires* of the INA.

## CONCLUSION

As Respondent is not properly classified as an "arriving alien," he is eligible for bond. The Court should therefore rule that Respondent is eligible for custody redetermination.

Date:   June 25, 2025                    Respectfully submitted,

_____
EDWARD F. RAMOS
EOIR No.: SQ148797
eramos@kktplaw.com

9

Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Avenue
Coral Gables, Florida 33134
(305) 444-0060 – Telephone
(305) 444-3503 – Fax

EOIR 11 of 12

10

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the following (with attachments as relevant) was served upon opposing counsel as follows:

RESPONDENT'S BRIEF IN SUPPORT OF BOND ELIGIBILITY

**Service:**

☒  ECAS – both parties participate in ECAS, so no separate service was completed
☐  Hand delivery
☐  Overnight Priority Mail
☐  Non-priority Mail
☐  Courier Service
☐  ICE e-Service online system
☐  Electronic Mail

Date:   June 25, 2025

EDWARD F. RAMOS
EOIR No.: SQ148797
eramos@kktplaw.com

Kurzban, Kurzban, Tetzeli & Pratt, P.A.
131 Madeira Avenue
Coral Gables, Florida 33134
(305) 444-0060 – Telephone
(305) 444-3503 – Fax