

U.S. Department of Justice

United States Attorney
District of Hawaii

*PJKK Federal Building*
*300 Ala Moana Blvd., Room 6-100*
*Honolulu, Hawaii 96850*

*(808)541-2850*
*FAX (808) 541-3752*

July 11, 2025

**VIA EMAIL**

Honorable Jill A. Otake
United States Magistrate Judge
300 Ala Moana Boulevard
Honolulu, HI 96850

    Re:   *Chunming Wang v. Estela Derr, et al.*
           Case No. CV25-00231 JAO-RT

Dear Judge Otake:

Pursuant to the Court's EO filed this morning, counsel held a telephonic meet and confer after exchanging proposed Joint Status Reports. The parties were unable to agree to the language of a Joint Status Report and the parties' proposed language for a Joint Status Report are as follows:

**A. Respondent's Proposed Joint Status Report Language**

During the July 10, 2025 hearing, Immigration Judge Wagner denied Mr. Wang's motion to terminate the removal proceedings. After Immigration Judge Wagner made his ruling, Mr. Wang was asked if he was ready to enter his pleading. Mr. Wang's counsel asked for a continuance to enter his pleading and when offered two dates, July 22, 2025 or July 30, 2025, he chose July 30,2025 as the hearing date.

Mr. Wang then asked to address the Court, stated that his medical needs were not being met at the Honolulu Federal Detention Center and asked for release and/or a bond hearing. Immigration Judge Wagner stated that Honolulu FDC has procedures in place to request medical treatment and his attorneys could convey

their concerns to Immigration and Customs Enforcement (ICE) if the Honolulu FDC was not meeting his expectations.

Immigration Judge Wagner further stated that if Mr. Wang was not satisfied with ICE's response, Mr. Wang could raise these concerns with Judge Wagner. Mr. Wang also based on his request for a bond hearing on his seriously ill 13 year-old son and his need to authorize his representative to make a $2,000,000 tax payment. Immigration Judge Wagner denied Mr. Wang's request for a bond hearing.

### B. Petitioner's Proposed Joint Status Report Language

As it relates to these proceedings, the pertinent fact about the July 10, 2025 removal hearing is that Judge Wagner orally denied Petitioner's motion to terminate proceedings without explanation, elaboration, or written order. If there were any doubt before, it is now crystal clear: no immigration judge will rule on Petitioner's claim that he is not an "arriving alien," and that his detention without bond is therefore unlawful.

The Government regales a play-by-play of Petitioner's removal hearing, but omits key context that explains how Petitioner's detention—and the conditions surrounding it—have substantially impeded his ability to mount a defense to removal.

First, detention officers held Petitioner in the Honolulu Federal Detention Center's ("FDC") Special Housing Unit ("SHU") from June 18 to July 7, 2025. During that time, Petitioner's counsel were severely limited in their ability to communicate with Petitioner and prepare his immigration case. FDC Honolulu released Petitioner from the SHU after reviewing a urine test that established that FDC Honolulu had no cause to place Petitioner in the SHU in the first place. Additionally, Petitioner's release followed Petitioner informing FDC Honolulu that Petitioner had not received adequate interpretation and translation services during the initiating incident and investigation, resulting in multiple errors in the incident report.

It was in this context that after Immigration Judge Wagner orally denied Petitioner's motion to terminate, Petitioner himself addressed the Court and stated that his medical needs were not being met at the Honolulu FDC. Among many

issues, (1) ICE has not scheduled Petitioner for an MRI despite informing Petitioner weeks ago that they would do so, (2) FDC Honolulu has refused to allow Petitioner to use distilled water for his CPAP machine, and (3) FDC Honolulu has failed to provide proper sanitary kits for cleaning of Petitioner's CPAP equipment. Petitioner has expressed his deep concern that he may die in detention. And Petitioner's reasonable preoccupation with his medical conditions has naturally impeded his ability to work with his counsel to develop defenses to removal.

True, Immigration Judge Wagner told Petitioner that if he was dissatisfied with ICE's response to his concerns regarding his treatment at FDC Honolulu, Petitioner could raise those concerns with Judge Wagner. But besides granting a bond, Petitioner's counsel is unaware of any process or procedure by which an immigration judge can address an immigration-detainee's concerns about the conditions of his ICE detention.

Petitioner hopes this context is helpful in the Court's determination on the proper path forward in this Action.

This concludes the parties' response to the EO issued by the Court this morning. Thank you for your attention to this matter.

Respectfully submitted,

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

 /s/ Edric M. Ching
By_____
EDRIC M. CHING
Assistant U.S. Attorney


EMC:htr
cc: Na Lan, Esq. (Nl@hawaiilawyer.Com)
    Edward F. Ramos. Esq. (Eramos@kktplaw.Com)
    Kevin Gregg, Esq. (Kgregg@kktplaw.com)
    Togtokhbayar Ganzory. (togtokhbayar@ice.dhs.gov)