IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHUNMING WANG,<br><br>Plaintiff,<br><br>vs.<br><br>ESTELA DERR, ET AL.,<br><br>Defendants. | CIV. NO. 25-00231 JAO-RT<br><br>ORDER DISMISSING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 13) |

**ORDER DISMISSING AMENDED PETITION FOR WRIT OF HABEAS CORPUS (ECF NO. 13)**

Petitioner Chunming Wang ("Mr. Wang") is a 76-year-old Chinese national with brain cancer and other health issues. He had an application for lawful permanent residence (through his citizen daughter) pending since 2018, but on May 30, 2025, United States Citizenship and Immigration Services ("USCIS") denied it and put the decision in the mail. That same day—so obviously before Mr. Wang or his representatives knew about the denial—agents from Immigration and Customs Enforcement ("ICE") invited him to a meeting on June 2, 2025, without mentioning this critical update in Mr. Wang's immigration status. At the meeting, the agents told Mr. Wang about the denial and that he was subject to mandatory detention pending removal proceedings. He has been detained at the Federal Detention Center in Honolulu ("FDC") since.

Before the Court is Mr. Wang's Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Amended Petition") and his Application for Order to Show Cause.  *See* ECF No. 13; ECF No. 2.  He challenges his designation as an "arriving alien," which subjects him to mandatory detention without a bond hearing during his removal proceedings.  ECF No. 13 at 3.  Ultimately, Mr. Wang asks the Court to issue a Writ of Habeas Corpus ordering Respondents[1] to release him, or at least allow him the opportunity to seek release on bond from an immigration judge.  *Id.* at 14.  The government responds that this Court lacks jurisdiction to consider the question.  *See* ECF No. 25 at 1.

As explained below, the Court concludes that the closest Ninth Circuit precedent deprives this Court of jurisdiction.  As such, the Court DENIES the Application for Order to Show Cause and DISMISSES the Amended Petition. Recognizing that the jurisdictional question is a close call, and that a more fulsome discussion may facilitate any potential appeal, the Court also ALTERNATIVELY DENIES the Amended Petition on the merits.

---

[1]  The named Respondents are Estela Derr (FDC Warden), Polly Kaiser (Acting Field Office Director of ICE's San Francisco Field Office), Pam Bondi (United States Attorney General), and Kristi Noem (Secretary of Homeland Security).  The Court refers to Respondents generally as "the government."

## I.    BACKGROUND

In July 2018, Mr. Wang was admitted to the United States on a B-2 tourist visa.  *See* ECF No. 13 ¶ 34; ECF No. 25-1 ¶ 7 (Decl. of Leon Ho).  A few months later, in October, Mr. Wang's daughter ("Yunlu") filed a Form I-130 petition seeking to classify Mr. Wang as her parent.  ECF No. 13 ¶ 35; ECF No. 25-1 ¶ 8.  Simultaneously, Mr. Wang applied for an adjustment of status to lawful permanent resident based on his relationship to Yunlu, and using Form I-485.  ECF No. 13 ¶ 37; ECF No. 25-1 ¶ 8.  He also submitted a Form I-131 Application for Travel Document.  *See* ECF No. 13 ¶ 38; ECF No. 25-1 ¶ 9.  USCIS approved the Application for Travel Document on March 22, 2019 for a one-year period until March 21, 2020.  *See* ECF No. 13 ¶ 40; ECF No. 25-1 ¶ 9.  The travel document "SERVES AS I-512 ADVANCE PAROLE."  ECF No. 13-4 at 2.  At some point during the advance parole period, Mr. Wang departed the United States.  ECF No. 13 ¶ 41; ECF No. 25-1 ¶ 10.  He returned on January 3, 2020, and was paroled into the country.  ECF No. 13 ¶ 42; ECF No. 25-1 ¶ 10.  This was his most recent entry to the United States.  *See* ECF No. 13 ¶ 43.  All the while, and until a few weeks ago, Mr. Wang's application for adjustment of status remained pending.  *See* ECF No. 13 ¶¶ 41–42, 44–45; ECF No. 25-1 ¶¶ 10–11.  During that time, Mr. Wang met with USCIS twice, with the last interview occurring in August 2021.

Then, on Friday, May 30, 2025, USCIS denied Mr. Wang's application for adjustment of status and mailed his counsel the decision. ECF No. 13 ¶¶ 45–46; ECF No. 25-1 ¶ 11. That same day, ICE contacted Mr. Wang and invited him to come to their office the following Monday, June 2, for a meeting "to discuss an unrelated topic."[2] *See* ECF No. 13 ¶ 47. The ICE agents didn't inform Mr. Wang about the denial at that time. *See id.* During the June 2 meeting, however, ICE hand-delivered the denial and informed Mr. Wang that he would be placed in expedited removal proceedings and subject to mandatory detention. *See id.* ¶¶ 49–50. ICE then arrested Mr. Wang and placed him into custody at FDC, where he has remained since.[3] *See id.* ¶ 51; ECF No. 25-1 ¶ 12.

Mr. Wang filed his initial Petition for Writ of Habeas Corpus on the day he was arrested and detained. *See* ECF No. 1. Originally, he challenged his placement into expedited removal proceedings and the resulting mandatory

---

[2] The record doesn't identify the unrelated topic.

[3] The Court expresses concern about the alleged conditions of Mr. Wang's detention at FDC. According to Mr. Wang, "(1) ICE has not scheduled Petitioner for an MRI despite informing Petitioner weeks ago that they would do so, (2) FDC Honolulu has refused to allow Petitioner to use distilled water for his CPAP machine, and (3) FDC Honolulu has failed to provide proper sanitary kits for cleaning of Petitioner's CPAP equipment." ECF No. 45 at 3. Assuming these facts are true—and the government hasn't suggested that they aren't—the Court implores FDC Honolulu to consider the ramifications of failing to remedy these conditions.

detention.  *See id.* ¶ 43.  Two days later, though, Mr. Wang received a Notice to

Appear ("NTA"), which indicated that ICE had placed him in removal proceedings

pursuant to the Immigration and Nationality Act ("INA") § 240 (8 U.S.C. § 1229a)

as opposed to expedited removal under INA § 235 (8 U.S.C. § 1225(b)(1)).  *See*

ECF No. 13 ¶ 53; ECF No. 25-1 ¶ 13; ECF No. 13-2 at 2.  The NTA classified Mr.

Wang as an "arriving alien" and charged him removable under INA § 212

(a)(7)(A)(i)(I) (8 U.S.C. § 1182(a)(7)(A)(i)(I)):

In the Matter of:

Respondent:  CHUNMING WANG _____ currently residing at:

In DHS/ICE Custody PO BOX 30080 Honolulu, HAWAII 96820 _____

(Number, street, city, state and ZIP code)                                    (Area code and phone number)

[X] You are an arriving alien.

[ ] You are an alien present in the United States who has not been admitted or paroled.

[ ] You have been admitted to the United States, but are removable for the reasons stated below.

ECF No. 13-2.

Mr. Wang filed his Amended Petition on June 5.  ECF No. 13.  The

government timely filed its Answer to the Amended Petition on June 11.  ECF No.

25.  The Court set a status conference with the parties for June 17.  ECF No. 27.

And Mr. Wang filed his Reply on June 13.  ECF No. 28.  At the status conference,

the parties discussed the general status of Petitioner's immigration proceedings.

Mr. Wang had his initial master calendar hearing before an Immigration

Judge ("IJ") on June 18, 2025, advised the IJ that he objected to his designation as

an "arriving alien," and filed a "Motion to Terminate" the proceedings.  *See* ECF

No. 30 at 1.  The IJ requested briefing on the matter and set another master calendar hearing for July 10 to rule on the issue.  *Id.* at 2.

Apart from his proceedings before this Court and the IJ, Mr. Wang also submitted a parole request to ICE on June 6, 2025.  *See* ECF No. 25-1 ¶ 15.  The Court asked the parties to keep it abreast of the parole application as counsel represented to the Court that a grant of parole would moot the Amended Petition.  Alas, ICE denied the request and informed Petitioner's counsel on the evening of June 20, 2025.  *See* ECF No. 33 at 1.  The parties told the Court on June 24, and the Court set a hearing on the Amended Petition for June 27.  *See* ECF Nos. 33, 34.

At that hearing, Mr. Wang informed the Court that he had a bond hearing scheduled for the following week before a different IJ.  In light of the potential bond hearing, the Court set a status conference for July 3.  *See* ECF No. 38.  The Court also ordered supplemental briefing regarding jurisdiction, which the parties timely filed.  *See* ECF Nos. 39–41.  On July 2, Mr. Wang informed the Court that the IJ had denied bond "because [Mr. Wang] has been charged as an arriving alien."  *See* ECF No. 42 at 1, 4.  The next day, the Court held the status conference, heard argument from the parties on jurisdiction, and took the Amended Petition under advisement.  ECF No. 43.

On July 10, 2025, the IJ denied the Motion to Terminate without explaining whether Mr. Wang was properly designated as an arriving alien.  *See* ECF No. 45.

## II.    LEGAL STANDARD

Although not styled as a motion to dismiss, the government's answer requests such relief.  *See* ECF No. 25 at 6.  In any event, "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).

"A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.  The habeas petitioner bears the burden of establishing entitlement to the writ.  *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009); *see also Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004).

## III.    DISCUSSION

The government argues that various provisions of the INA deprive the Court of subject matter jurisdiction.  *See* ECF No. 25 at 8–16.  Mr. Wang responds that the government's cited precedent is distinguishable and that the INA's jurisdiction stripping sections don't apply to his Amended Petition.  *See* ECF No. 28 at 17.

The Court concludes it lacks jurisdiction based on 8 U.S.C. § 1252(g) and so dismisses the Amended Petition.  As such, the Court need not address the parties' arguments regarding jurisdiction under 8 U.S.C. § 1252(b)(9) or reach the merits of

7

the Amended Petition, but considers both briefly as alternative reasons to dismiss

or deny it.

## A.    Section 1252(g)

In support of its request for dismissal, the government predominately relies

on 8 U.S.C. § 1252(g), which states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter.

*Id.* (emphasis added).  From this, the government asserts that Mr. Wang's

detention is part and parcel of the decision to commence removal proceedings and

thus unreviewable by the Court.[4]  Petitioner retorts that his Amended Petition

doesn't challenge any decision or action to commence removal proceedings or seek

removal against him.  "Rather, his challenge is narrowly focused on the

Government's decision to *detain* him without opportunity for bond during the

pendency of those proceedings."  ECF No. 28 at 9.  The Court must therefore

decide whether the government's designation of Mr. Wang as an arriving alien

---

[4]  The government does not argue that Mr. Wang's detention arises from any decision or action to adjudicate the case or execute a removal order.  *See* ECF No. 25 at 9 (emphasizing commencement aspect).

(and hence his detention) "arises from" the commencement of proceedings against him.

To start, the Supreme Court has interpreted § 1252(g) "narrowly" to apply only to the three discrete actions listed:  commencing proceedings, adjudicating cases, and executing removal orders.  *See Reno v. American-Arab Anti-Discrimination Comm*., 525 U.S. 471, 482 (1999) ("*AADC*").  The Court explained that "[t]here was good reason for Congress to focus special attention upon" these actions because they "represent the initiation or prosecution of various stages in the deportation process," where the immigration agency enjoys discretion.  *See id.* at 483–87.  By contrast, the Court noted that § 1252(g) would not bar challenges to "many other decisions . . . such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order."  *Id.* at 482.  In short, "Section 1252(g) was directed against a particular evil:  attempts to impose judicial constraints upon prosecutorial discretion.  It does not tax the imagination to understand why it focuses upon the stages of administration where those attempts have occurred."  *Id.* at 485 n.9.

More recently, the Supreme Court narrowly construed the meaning of "arises from" in 8 U.S.C. § 1252(b)(9), a similar provision of the INA.[5]  *See Jennings v. Rodriguez*, 583 U.S. 281, 292–94 (2018) (plurality).  In *Jennings*, a class of immigration detainees sought habeas relief for their prolonged detention without a bond hearing.  *See id.* at 290–91.  The Ninth Circuit had held—as a matter of constitutional avoidance—that the INA eventually required detainees to receive a bond hearing from an IJ.  *See id.* at 291–92.

Considering its jurisdiction, the Supreme Court assumed without deciding that actions taken against the detainees (i.e., detention) constituted "actions taken to remove them from the United States."  *Id.* at 292–93 (internal brackets and ellipsis omitted).  But it concluded that the legal challenge to the prolonged nature of the detention without bond didn't "arise from" such an action.  In doing so, it rejected the idea that *any* challenge to *any* aspect of detention "arises from" actions taken to remove the detainees—even if in a literal sense the detainees "would not be in custody at all" if the government wasn't trying to remove them.  *Id.* at 293.  The Supreme Court explained that "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively

---

[5]  That provision states:  "Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

unreviewable" because the extended detention would have taken place before the issuance of the final (reviewable) order. *Id.* To bolster its conclusion, it paraphrased *AADC*'s interpretation of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Id.* at 294 (citing *AADC*, 525 U.S. at 482–83).

While the two Supreme Court cases' directive to read the judicial review provisions of the INA narrowly provide some guidance, neither case is directly on point. And neither describes the precise contours of when a challenge is close enough to an action taken by the government to say that it "arises from" that action. In *AADC*, the noncitizens explicitly challenged—mostly on First Amendment grounds—the decision to commence removal proceedings against them. *See AADC*, 525 U.S. at 474. As such, their case fell squarely within § 1252(g). Whereas, in *Jennings*, the Supreme Court—despite commenting that it was not "provid[ing] a comprehensive interpretation" of § 1252(b)(9)—still thought it important to note that the detainees were "not challenging the decision to detain them in the first place or to seek removal." *Jennings*, 583 U.S. at 294. The plurality opinion did not expand on the implication of the fact that the detainees were not challenging the initial decision to detain them, but the most plausible

11

reading of the comment is that the jurisdictional conclusion may have been different if the detainees had done so.  Granted, the Supreme Court did not so hold and did not explain its reasoning, so the Court is hesitant to read too much into the comment.  The Court thus turns to Ninth Circuit caselaw for additional direction.

The Ninth Circuit has concluded that courts lack jurisdiction under § 1252(g) to review a noncitizen's detention in circumstances analogous to those here.  *See Sissoko v. Rocha*, 509 F.3d 947 (9th Cir. 2007) ("*Sissoko II*").  Sissoko, a Senegalese citizen, entered the United States on a visitor's visa and then overstayed.  *See Sissoko v. Rocha*, 440 F.3d 1145, 1149 (9th Cir. 2006) ("*Sissoko I*").[6]  While here, he applied for immigration status.  *See id.* at 1149–50.  During the pendency of Sissoko's applications, his father died, so to attend the funeral without jeopardizing his applications, Sissoko requested and received "an advance parole document . . . giving him permission to travel to and remain in Senegal for up to thirty days."  *Id.*  Upon returning to the United States, Sissoko sat for several interviews with immigration officials and was subject to a two-day detention.  *See id.*  Thereafter, Sissoko married a United States citizen, applied for adjustment of

---

[6] Although *Sissoko II* withdrew and replaced *Sissoko I*, *Sissoko II* still relied on the fact section in *Sissoko I*.  *See Sissoko II*, 509 F.3d at 948.  Hence, the Court does the same.  The Court also recognizes that there is another *Sissoko v. Rocha*, 412 F.3d 1021 (9th Cir. 2005), that predates the two the Court discusses here, but elects not to give it a short title.

status, and presented for another interview on August 26, 1997.  *See id.* at 1150–51.

At the interview, the immigration official detained Sissoko and initially placed him into expedited removal proceedings.  *See id.* at 1150; *see also Sissoko II*, 509 F.3d at 948–49.  During the interview, Sissoko claimed a fear of persecution if he returned to Senegal, which triggered the mandatory detention provision in 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).  *See Sissoko II*, 509 F.3d at 948–49.  Ultimately, however, the government decided not to pursue expedited removal and instead issued Sissoko a Notice to Appear and placed him in regular removal proceedings.  *See id.* at 949.  He (somehow) eventually became eligible for bond and obtained release on November 17, 1997.  *See Sissoko I*, 440 F.3d at 1151.  The IJ thereafter concluded he was not an "arriving alien" and granted his application for adjustment of status.  *See id.* at 1152.

After all that, Sissoko filed suit against various federal defendants, asserting a *Bivens* false arrest claim and alleging that immigration officials wrongfully took him into custody at the August 1997 interview.  *See id.*  Eventually, in *Sissoko II*, the Ninth Circuit concluded that § 1252(g) deprived the district court of jurisdiction over Sissoko's claim.  *See Sissoko II*, 509 F.3d at 949.  Based on the sequence of events, and "particularly the existence in the record of a half-completed Form I–860 [Notice and Order of Expedited Removal]," the court

concluded "that Sissoko's detention arose from [the immigration official's]

decision to commence expedited removal proceedings," which mandated

detention, and that Sissoko's claim "directly challenge[d]" that decision. *Id.* at

949–50.

　　To be sure, *Sissoko II*'s reasoning is somewhat sparse, and the court's

holding is at least partially animated by the availability of another avenue by which

Sissoko could have challenged his detention, namely, § 1252(e), which allows

limited habeas review for people in expedited removal proceedings. *See id.* at 950.

The court also took pains to stress that its holding was limited to the context of the

case. *See id.*  In fact, the court expressly noted that it was not deciding whether "8

U.S.C. § 1252(g) would apply if Sissoko had been ordered removed after an

adverse credible fear determination, thereby eliminating his habeas avenue of

relief." *Id.* at 950 n.4.  Still, the Ninth Circuit concluded that Sissoko's detention

arose from the commencement of the action because of the mandatory nature of the

detention under the statute.

　　District courts in this circuit have interpreted *Sissoko II* to bar challenges to a

detainee's designation as an arriving alien, albeit in post-detention tort actions. *See*

*Wang v. United States*, 2010 WL 11463156, at *6 (C.D. Cal. Aug. 18, 2010);

*Valencia-Mejia v. United States*, 2008 WL 4286979, at *4 (C.D. Cal. Sept. 15,

2008).  In *Wang*, for example, a Taiwanese citizen who had been living in the

14

United States arrived in Los Angeles after a trip abroad and "was arrested by ICE agents and charged as an arriving alien without proper documentation." *Id.* at *1. He was served with a Notice to Appear, charged as an arriving alien, and thus subject to mandatory detention during his removal proceedings. *Id.*  In his immigration proceedings, plaintiff filed a Motion to Terminate, arguing that he was miscategorized as an arriving alien. *Id.* at *2.  The IJ apparently agreed and granted the motion. *Id.*  But plaintiff remained in detention as the government appealed to the Board of Immigration Appeals ("BIA"). *Id.*  He only obtained release about six months after his initial arrest when the BIA denied the appeal. *Id.*

Plaintiff thereafter sued government defendants under the Federal Tort Claims Act for (as relevant) false imprisonment and malicious prosecution. *See id.* He alleged that the defendants "initiated removal proceedings against him by asserting the bad faith argument that [plaintiff] was an 'arriving alien' under the immigration laws" and argued "that this legal contention was not supported by binding precedent; that he in fact was not an arriving alien as defined in the immigration laws; and that by classifying him as such, [defendants] deprived the immigration judge of any jurisdiction to set bond and assured [plaintiff's] mandatory detention during the pendency of removal proceedings." *Id.* at *4.

The government moved to dismiss based on § 1252(g)'s bar against challenging the commencement of removal proceedings. *See id.*  The court

15

recognized that plaintiff didn't "*directly* challenge the decision to initiate removal proceedings against him," but instead "challenge[d] the decision to detain him during the pendency of removal proceedings." *Id.* at *5. Nevertheless, the district court granted the motion, concluding that plaintiff's "detention necessarily [arose] from the decision to initiate removal proceedings against him." *Id.* at *6. The court considered *Sissoko II* "directly on point," because there the "defendant had initiated expedited removal proceedings against the plaintiff" and "the plaintiff's detention was mandated as a result of that process." *Id.* (citing *Sissoko II*, 509 F.3d at 949). Similarly, in *Wang*, plaintiff's removal proceedings and detention began simultaneously when he was served with a Notice to Appear, which charged him as an "arriving alien," and which mandated detention. *See id.* at *7.

One of the district court cases *Wang* relied on came to a similar conclusion. In *Valencia-Mejia*, the district court dismissed plaintiff's false imprisonment claim as barred by § 1252(g). *Valencia-Mejia*, 2008 WL 4286979, at *4. The plaintiff argued that his "claim [did] not involve a challenge to prosecutorial discretion to institute removal proceedings," but rather the decision to detain him. *See id.* at *3–4. The court rejected the contention and noted that when defendant issued a Notice to Appear, it commenced removal proceedings and that "[i]t follows that the decision to detain plaintiff until his hearing before the Immigration Judge arose from this decision to commence proceedings." *Id.* at *4.

To sum up, the Ninth Circuit and at least two in-circuit district court cases have concluded that when detention begins with the commencement of removal proceedings, courts lack jurisdiction to review a challenge to the detention based on § 1252(g).  *See Sissoko II*, 509 F.3d at 949; *Wang*, 2010 WL 11463156 at *6; *see also Castellar v. Nielsen*, 2018 WL 786742, at *8 (S.D. Cal. Feb. 8, 2018) (dismissing a Fourth Amendment claim by plaintiff initially placed in expedited removal proceedings and subject to mandatory detention); *Martinez v. United States*, 2014 WL 12607839, at *5 (C.D. Cal. Mar. 17, 2014) ("[T]he Ninth Circuit has held that federal courts lack jurisdiction with respect to a detention that automatically results from the decision to commence proceedings." (citing *Sissoko II*, 509 F.3d at 949)); *cf. Medina v. U.S. Dept. of Homeland Sec.*, 2017 WL 2954719, at *16 n.28 (distinguishing *Sissoko II* and discussing how § 1252(g) doesn't bar challenges to events *prior to* the decision to commence proceedings). Those courts have concluded they lack jurisdiction even if the plaintiff doesn't directly contest the removal proceedings, but instead narrowly targets detention during the proceedings.  And those courts also concluded that they lacked jurisdiction if the detention was statutorily mandated.  It's further notable that in both *Sissoko II* and *Wang* the plaintiffs were correct that they had been miscategorized but validated those arguments in immigration proceedings first.

17

In his supplemental brief, Mr. Wang cites *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018), for the premise that § 1252(g) does not bar jurisdiction over challenges to the lawfulness of detention, *see* ECF No. 41 at 6, but the case is clearly distinguishable.  There, the government "wrongfully removed [the plaintiff] to Mexico, in direct violation of a temporary stay of removal," before returning him to the United States two weeks later.  *Arce*, 899 F.3d at 798.  The government argued that the plaintiff's FTCA claims (for, as relevant, false arrest and imprisonment) were unreviewable because the wrongful removal arose from a decision or action to execute a removal order.  *See id.* at 799.  The Ninth Circuit, however, agreed with the plaintiff that the government lacked authority to remove the plaintiff based on the court's temporary stay of removal.  *See id.* at 800.  As such, the plaintiff's "claims ar[o]se not from the execution of the removal order, but from the violation of our court's order."  *Id.*  The court continued that, because the government lacked authority to remove the plaintiff (at that time), it also lacked discretion to effectuate removal, and thus §1252(g) was "simply not implicated." *See id.* at 800–01.

Mr. Wang argues that *Arce* is analogous and that his arriving alien designation is a legal challenge to the government's authority rather than its

discretion.[7]  *See* ECF No. 41 at 6.  But there is a wide gulf between the

government's violation of a clear court order and its labeling someone an arriving

alien.  Indeed, a sort of proximate cause analysis appears to animate the Ninth

Circuit in *Arce*.  *See id.* at 800 ("[B]ut for the violation of the stay of removal, [the

plaintiff] would not have an FTCA claim at all").

     In some ways, the *Jennings* plurality hints at the same type of limit on

"arising from," in concluding that challenges to *prolonged* detention may be

pursued in court.  *See Jennings*, 583 U.S. at 292–95.  Both *Arce* and *Jennings* rely

on some intervening event or separate circumstances from the challengers'

ultimate removal to conclude that the detention/arrest was reviewable—the

duration of detention in *Jennings* and the violation of a court order in *Arce*.  No

similar circumstance or passage of time is present here or in *Sissoko II*, however.

In both cases, the detention springs more directly from the decision to commence

---

[7]  The Court acknowledges that the Ninth Circuit has emphasized that § 1252(g) bars challenges to the *discretionary* actions or decisions involved in proceedings. *See United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (commenting that district courts "may consider a purely legal question that does not challenge the Attorney General's discretionary authority"); *see also Catholic Soc. Servs., Inc. v. INS*, 232 F.3d 1139, 1150 (9th Cir. 2000) (noting that § 1252(g) "applies only to the three specific discretionary actions mentioned in its text, not to all claims relating in any way to deportation proceedings").  But those cases don't address situations analogous to those here and *Sissoko II*, and those district courts that apply *Sissoko II* conclude that detention pursuant to the commencement of proceedings is intertwined with the decision to begin those proceedings.

proceedings. Put simply, Mr. Wang's challenge is more akin to the one at issue in *Sissoko II* than the claim in *Arce*.

Still, *Sissoko II* and the district courts that follow it aren't precisely on point. As Mr. Wang points out, *Sissoko II* "was a damages action for false arrest, not a habeas or injunctive challenge to ongoing detention." ECF No. at 10–11. This is also true of the California district court cases the Court cites above. But Mr. Wang doesn't articulate why this difference matters and the plain text of § 1252(g) explicitly precludes habeas challenges. *See* 8 U.S.C. § 1252(g) ("[N]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction . . ."). And while *Sissoko II* relied on the availability of § 1252(e) habeas relief in support of its holding, that would not necessarily affect the *Sissoko II* court's statutory conclusion that Sissoko's detention arose out of the commencement proceedings.

Further, the Court notes here that Mr. Wang appears to have administrative avenues to challenge his detention as evidenced by the fact that the IJ took briefing on whether the government improperly classified him. The fact that the IJs in the proceedings underlying the *Sissoko* cases and *Wang* concluded that the detainee had been misclassified demonstrates that the immigration courts may adjudicate arriving alien status. Such administrative opportunities to challenge detention also

reduce Suspension Clause concerns, which in any case, Mr. Wang underdeveloped in his briefing. *See Velasco Gomez v. Scott*, 2025 WL 1726465, at *4–6 (W.D. Wash. June 20, 2025) (dismissing challenge to detention under § 1252(g) and rejecting argument that if § 1252(g) precludes review, it violates the Suspension Clause); *see also Puri v. Gonzales*, 464 F.3d 1038, 1041–42 (9th Cir. 2006) ("The Supreme Court has held, however, that 'the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.'" (quoting *Swain v. Pressley*, 430 U.S. 372, 381 (1977))).[8]

Out-of-circuit caselaw doesn't necessarily clarify the picture. The government directs the Court to *Alvarez v. Immigration and Customs Enforcement*, 818 F.3d 1194 (11th Cir. 2016), which affirmed a district court's dismissal of plaintiff's challenge to his detention pending removal proceedings. *See id.* at 1203–04. *Alvarez*, in turn, relied on another Eleventh Circuit opinion, *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013). In *Gupta*, plaintiff claimed that

---

[8]  The Court recognizes that Mr. Wang disputes whether a viable administrative avenue to challenge his designation exists. *See* ECF No. 45 at 2 ("If there were any doubt before, it is now crystal clear:  no immigration judge will rule on Petitioner's claim that he is not an 'arriving alien.'").  But the IJ's denial of the Motion to Terminate without discussing the issue does not necessarily mean that the IJ declined to rule on the claim or lacked authority to do so; the IJ may have just rejected it on the merits.

immigration officials "illegally procured an arrest warrant," "illegally arrested him," and "illegally detained him." *Id.* at 1065. Affirming the district court's dismissal of plaintiff's *Bivens* claim, the court noted that the immigration official's detention recommendation was set forth in an arrest warrant, which was effectuated at the same time the notice to appear was delivered. *See id.* at 1064– 65. The court thus concluded that challenges to the procuring and execution of the warrant were challenges to actions the agents took to commence removal proceedings. *Id.* at 1065. It commented, "[s]ecuring an alien while awaiting a removal determination constitutes an action taken to commence proceedings," and that "[e]ach of [plaintiff's] claims allege, as his direct injury, an action taken to secure him." *Id.* The Eleventh Circuit caselaw thus suggests that the government's charge of Mr. Wang as an "arriving alien" is an action taken to commence proceedings and is thereby unreviewable.

But other courts disagree. For example, several district court cases from New York "have found that there is no deprivation of jurisdiction to hear claims arising from unlawful arrest or detention, because those claims are too distinct to be said to 'arise from' the commencement of removal proceedings." *Prado v. Perez*, 451 F. Supp. 3d 306, 312 (S.D.N.Y. 2020) (citing *You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) and *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018)); *see also Davis v. Garland*, 2022 WL 17155828 at *3 n.3

22

(W.D.N.Y Nov. 22, 2022).[9]  In *Michalski*, the petitioner sought habeas relief

challenging his arrest and continued detention on the ground "that the failure to

provide a neutral evaluation of the legal justification for his arrest and detention is

unconstitutional." *Michalski*, 279 F. Supp. 3d at 494.  The court rejected the

government's § 1252(g) argument because none of the discrete actions listed in the

statute "are implicated by Michalski's challenge to his detention" and because "the

decision or action to detain an individual under [8 U.S.C.] § 1226(a) is independent

from the decision or action to commence a removal proceeding." *Id.* at 495.  In

support, the court relied on the fact that the decision to arrest and detain someone

pending removal proceedings is discretionary under 8 U.S.C. § 1226(a).  *See id.*

Of course, that fact is distinct from the situation here where Mr. Wang is subject to

mandatory detention under 8 U.S.C. §1225(b)(2)(A).

More recently, and as discussed in Mr. Wang's supplemental brief, the First

Circuit concluded that § 1252(g) does not necessarily bar challenges to the legality

of detention.  In *Kong v. United States*, 62 F.4th 608 (1st Cir. 2023), the plaintiff

brought false arrest and imprisonment claims under the FTCA.  *See id.* at 608–09.

Kong, a native of Cambodia, was deported in 1996, but the United States did not

---

[9]  Mr. Wang cites several other out-of-circuit district court cases that similarly find
that challenges to detention are not barred by § 1252(g).  *See* ECF No. 41 at 8–10
(collecting cases).  Those cases are factually distinct and non-binding.

have a repatriation agreement with Cambodia at the time. *Id.* at 609. In June

2000, Kong was released on supervised release. *See id.* Almost two decades later,

as part of an enforcement effort against "Cambodian nationals living under orders

of supervision," ICE contacted Kong and had him:

> [C]omplete[] a questionnaire that the United States intended to
> use to obtain a travel document from the Cambodian government
> for the purpose of repatriating him. It is undisputed that Kong
> was not informed of the purpose of this paperwork or that his
> supervised release might be terminated because of the changed
> relationship between the United States and Cambodia.

*Id.* at 609–10. ICE arrested Kong in approximately April 2018 and held him for

about two months. *See id.* at 610. Kong thereafter filed his FTCA case, which the

district court dismissed under § 1252(g), concluding that Kong's claims "directly

related to, and arise from, actions taken by ICE to execute his final deportation

order." *Id.* at 610–11.

The First Circuit reversed the dismissal, relying heavily on an earlier case

from the circuit that analyzed the legislative history of the REAL ID Act of 2005.

*See id.* at 613–15 (citing *Aguilar v. U.S. Immigr. & Customs Enf't Div. of the Dep't

of Homeland Sec.*, 510 F.3d 1 (1st Cir. 2007)). The court discussed how Congress

had "specified that nothing in the amendment would 'preclude habeas review over

challenges to detention that are independent of challenges to removal orders.'" *Id.*

at 614 (quoting H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.)). In *Aguilar*, the

court concluded that § 1252(b)(9) did not bar the plaintiffs' challenge to detention,

24

and the *Kong* court reasoned that the same was true as to § 1252(g).  *See Kong*, 62 F.4th at 613–15.  The First Circuit thus held that "§ 1252(g) was passed with the understanding that collateral challenges to the legality of a petitioner's detention would not constitute causes or claims that arise from the decision or action by the Attorney General to execute removal orders."  *Id.* at 615 (internal quotation marks and alterations omitted).

The court also bolstered its conclusion by citing to the constitutional avoidance canon and explaining that, if it interpreted "arising from" to bar all challenges to detention, there would be "serious constitutional concerns under the Suspension Clause."  *Id.* at 616.  Kong claimed his renewed detention was unlawful because the government "rel[ied] on a decades-old warrant and fail[ed] to adhere to regulatory procedures."  *Id.* at 617.  "These assertions," the court concluded, were "plainly collateral to ICE's prosecutorial decision to execute Kong's removal."  *Id.*

But, even if the Court agrees with the reasoning of *Kong,* it is factually distinct from the instant scenario and runs headlong into *Sissoko II*.  First, the Court thinks it clear that Kong's detention was further removed from the "execution of removal" than Mr. Wang's is from the "commencement of proceedings."  In fact, the First Circuit noted Kong's challenge was not like those "to the kind of brief detentions that in certain circumstances may

25

implicate § 1252(g)'s jurisdictional bar." *Id.* at 618.  The court's recognition that there are some detentions that would be jurisdictionally barred demonstrates that the precise facts matter.  In both *Sissoko II* and here, the detention occurred at the commencement of proceedings and were mandated by statute.  The detentions here and in *Sissoko II* are thus temporally and operationally closer to the commencement in proceedings than the detention in *Kong* was to the execution of removal.  Second, Mr. Wang argues that *Kong* demonstrates that § 1252(g) "does not bar claims that challenge the legality of a noncitizen's detention."  ECF No. 41 at 5.  But *Sissoko II* forecloses such a broad proposition by concluding that the court lacked jurisdiction over a challenge to the legality of Sissoko's arrest and detention at least in that case's context.

Even reading *Kong* and *Sissoko II* as consistent with one another (and using the language of *Kong*), the Court concludes that Mr. Wang's challenge to his detention is *not* "plainly collateral" to the commencement of proceedings.  Again, *Sissoko II* supports the premise.  In *Sissoko II*, the Ninth Circuit concluded that the challenge to the statutorily mandated detention for a noncitizen who indicates an intent to apply for asylum during expedited removal proceedings "arose from" the commencement of those proceedings.  *See Sissoko II*, 509 F.3d at 949 (citing 8 U.S.C § 1225(b)(1)(B)(iii)(IV)).  Of course, it wasn't precisely the decision to commence expedited removal that led to the detention; it was Sissoko's claim that

he had a fear of persecution if returned to Senegal that triggered the statute. *Id.*

Yet the Ninth Circuit concluded that the mandated detention was essentially close

enough to the commencement of proceedings to be barred under § 1252(g). *See id.*

at 949–50.

The Court thinks the same can be said here.  The NTA commenced

proceedings and designates Mr. Wang as an arriving alien, which subjects him to

the mandatory detention.  Mr. Wang's designation—and hence detention—is not

plainly collateral to the commencement of proceedings.  Under *Sissoko II*, Mr.

Wang's challenge to the designation is barred.  In sum, the Court concludes that

*Sissoko II* and those district courts that follow it are the closest analogues to the

instant situation and dictate dismissal of the Amended Petition.  While the Court

understands conceptually that the commencement of removal proceedings and

detention pending those proceedings can be distinct, here the decisions are

intertwined.

The Notice to Appear, i.e., the document that commences proceedings,

demonstrates as much.  *See* 8 C.F.R. § 1239.1(a) ("Commencement.  Every

removal proceeding conducted under section 240 of the Act (8 U.S.C. 1229a) to

determine the deportability or inadmissibility of an alien is commenced by the

filing of a notice to appear with the immigration court.").  The NTA includes three

checkboxes:

In the Matter of:

Respondent:  CHUNMING WANG _____  currently residing at:

In DHS/ICE Custody PO BOX 30080 Honolulu, HAWAII 96820
                    (Number, street, city, state and ZIP code)                    (Area code and phone number)

[X]  You are an arriving alien.

[ ]  You are an alien present in the United States who has not been admitted or paroled.

[ ]  You have been admitted to the United States, but are removable for the reasons stated below.

*See* ECF No. 13-2 at 2.  It's this charging decision that dictates Mr. Wang's current

detention.[10]  Based on the caselaw and the facts at hand, the Court concludes that

§ 1252(g) bars the instant challenge and thus DISMISSES the Amended Petition.

The Court considers the jurisdictional question a close call and wishes to

note some concern about its conclusion.  As explained below, the Court

alternatively concludes that the government properly designated Mr. Wang as an

arriving alien.  But, hypothetically, would a district court really lack jurisdiction to

consider a habeas petition from a detainee whom ICE obviously or intentionally

miscategorized as an arriving alien?  The Court understands that an IJ may be able

to rectify the situation, but by that point the detainee would have spent weeks, or

probably months, behind bars.  And as demonstrated in this case, the procedures in

immigration court are complex and IJs may be hesitant to do something considered

outside the normal course.  The Court is not sure if this outcome is what Congress

---

[10]  The Court recognizes that Mr. Wang was taken into custody for expedited
removal proceedings before he was served with the NTA.  But the Amended
Petition challenges the NTA's arriving alien designation that mandates his *current*
detention.  *See* ECF No. 13-1 ¶¶ 53–54, 64.

intended by the various judicial review limitations in the INA, but feels bound by the caselaw.

**B.     Section 1252(b)(9)(a)**

While the Court need not reach the issue because it finds that § 1252(g) requires dismissal, the Court briefly addresses 8 U.S.C. § 1252(b)(9) and concludes that in this case the analysis would be largely the same.

The provision reads:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

*See* 8 U.S.C. § 1252(b)(9).  Unlike § 1252(g), which strips courts of jurisdiction, § 1252(b)(9) channels certain challenges to the Courts of Appeals via petitions for review of final orders of removal.  "The Supreme Court has thus characterized § 1252(b)(9) as a zipper clause, explaining that the statute's purpose is to consolidate judicial review of immigration proceedings into one action in the court of appeals."  *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (internal quotation marks and citations omitted).  The statute does not channel *all* challenges

29

related to immigration proceedings, however—only those "arising from any action taken or proceeding brought to remove an alien." *Id.* at 1032 (quoting 8 U.S.C. § 1252(b)(9)).

Here, the Court would conclude that Mr. Wang's challenge to his detention arises from an action taken or proceeding brought to remove him—namely the designation of him as an arriving alien on his NTA, which he challenged (and may still currently be challenging) in immigration proceedings. While the Court recognizes that *Jennings* didn't provide a comprehensive interpretation of § 1252(b)(9), its suggestion that the jurisdictional question may have been different if the detainees in that case had been challenging "the decision to detain them in the first place" is persuasive, *Jennings*, 583 U.S. at 294–95, especially considering that two justices would hold that § 1252(b)(9) bars challenges to all detention pending removal proceedings. *See id.* at 314 (Thomas, J. and Gorsuch, J., concurring). Further, because Mr. Wang may challenge his arriving designation in his immigration proceedings, interpreting § 1252(b)(9) as the Court has avoids any concerns about inconsistent rulings that may arise if there were concurrent jurisdiction.

## C.    Alternative Merits Discussion

Alternatively, if the Court had jurisdiction, it would conclude that the government's designation of Mr. Wang as an arriving alien accords with the

relevant statutory and regulatory provisions of the INA, and would thus deny the

Amended Petition.

Mr. Wang claims he is not an "arriving alien" under the regulatory definition

because he last entered the country pursuant to advanced parole.  ECF No. 13 ¶ 62.

But Mr. Wang selectively quotes the regulation whereas the whole definition belies

his claim:

> Arriving alien means an applicant for admission coming or
> attempting to come into the United States at a port-of-entry, or
> an alien seeking transit through the United States at a port-of-
> entry, or an alien interdicted in international or United States
> waters and brought into the United States by any means, whether
> or not to a designated port-of-entry, and regardless of the means
> of transport.  An arriving alien remains an arriving alien even if
> paroled pursuant to section 212(d)(5) of the Act, and even after
> any such parole is terminated or revoked.  However, an arriving
> alien who was paroled into the United States before April 1,
> 1997, or who was paroled into the United States on or after April
> 1, 1997, pursuant to a grant of advance parole which the alien
> applied for and obtained in the United States prior to the alien's
> departure from and return to the United States, will not be
> treated, solely by reason of that grant of parole, as an arriving
> alien *under section 235(b)(1)(A)(i) of the Act*.

8 C.F.R. § 1.2 (emphasis added).  Far from being exempted from the definition of

arriving alien in total, those who return to the United States on advance parole are

only exempted from the definition of arriving alien for the purpose 8 U.S.C.

§ 1225(b)(1)(A)(i), which describes *expedited removal*.  Thus, a plain reading of

the regulation demonstrates that Mr. Wang could not have been considered an

arriving alien for expedited removal, but is an arriving alien for other purposes.

31

*See Bona v. Gonzalez*, 425 F.3d 663, 667–68 (9th Cir. 2005) (explaining that those

noncitizens granted advance parole are only exempt from definition of arriving

alien "*for the purpose of* excluding them from expedited removal proceedings");

*Ibragimov v. Gonzalez*, 476 F. 3d 125, 136 (2d Cir. 2007) (same); *see also Duarte*

*v. Mayorkas*, 27 F.4th 1044, 1057–58 (5th Cir. 2022) ("The text of [8 C.F.R. § 1.2]

appears to contemplate that an alien who travels abroad and returns pursuant to a

grant of advanced parole is an arriving alien for purposes other than the expedited

removal proceedings authorized under 8 U.S.C. § 1225(b)(1)(A)(i), and this court

and other circuit courts have held that such an alien is by definition an 'arriving

alien.'" (some internal quotation marks and citations omitted)).

        In *Ibragimov*, the petitioner argued he was not an arriving alien when he

received his notice to appear because he had left the country and returned on

advance parole; instead, he claimed he was merely a visa overstay.  *See Ibragimov*,

476 F.3d at 130.  The Second Circuit rejected the notion, first relying on the

regulatory definition which only excludes advance parolees from the definition of

arriving alien for the purpose of expedited removal.  *Id.* at 136.  The court then

explained that the regulations "provide[] that upon termination of an alien's parole,

the alien 'shall be restored to the status that he or she had *at the time of parole*.'"

*Id.* (quoting 8 C.F.R. § 212.5(e)(2)(i)).  Relying on a Ninth Circuit case, the

Second Circuit emphasized that the time of parole was the actual parole into the

country upon return to the United States, rather than the time the advance parole was approved.  *See id.* at 136–37 (citing *Barney v. Rogers*, 83 F.3d 318, 321 (9th Cir. 1996)).  Thus, the petitioner's relevant status was that on the day of his parole back into the country, i.e., an arriving alien, as opposed to his status at the time he left the country, i.e., a visa overstay.  *See id.* at 137; *see also Barney*, 83 F.3d at 321 (commenting that advance parole did not "freeze" petitioner's status as visa overstay); *Iredia v. Atty Gen. of the United States*, 25 F.4th 193, 195–97 (3d Cir. 2022) (rejecting argument that advance parolee was not an arriving alien).[11]

Such caselaw directly contradicts Mr. Wang's contention that his "entry on an advance parole travel document means that, under immigration law, he is properly treated as maintain (sic) the same status he held prior to his departure—to wit, as an individual admitted on a B-2 visa which had expired."  ECF No. 13 ¶ 63 (citing *Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771 (BIA 2012)).  And Mr. Wang's BIA precedent doesn't stand for the premise.  Rather, *Matter of Arrabally and Yerrabelly* holds that "[a]n alien who leaves the United States temporarily pursuant to a grant of advance parole does not thereby make a 'departure . . . from the United States' within the meaning of section

---

[11]  The Court recognizes these cases discuss the historical division between exclusion and deportation proceedings, but the analysis of the statutory and regulatory provisions remains relevant.

212(a)(9)(B)(i)(II) of the Immigration and Nationality Act, 8 U.S.C.

§ 1182(a)(9)(B)(i)(II) (2006)." *See* 25 I&N at 771.  But Mr. Wang was not

charged as removable under that statute.  Plus, notably, the BIA stressed that its

holding was limited, *see id.* at 780, and did not discuss whether someone like Mr.

Wang who left the country on advance parole maintained the status he had when

he initially entered the country to apply for adjustment of status.

Other regulatory provisions support the conclusion that Mr. Wang was

properly categorized as an arriving alien.  One regulation, 8 C.F.R.

§ 1245.2(a)(1)(ii), delineates when an IJ may adjudicate an application for

adjustment of status:

> (ii) Arriving Aliens. In the case of an arriving alien who is placed
> in removal proceedings, the immigration judge does not have
> jurisdiction to adjudicate any application for adjustment of status
> filed by the arriving alien unless:
>
> > (A) The alien properly filed the application for adjustment of
> > status with USCIS while the arriving alien was in the United
> > States;
> >
> > (B) The alien departed from and returned to the United States
> > pursuant to the terms of a grant of advance parole to pursue
> > the previously filed application for adjustment of status;
> >
> > (C) The application for adjustment of status was denied by
> > USCIS; and
> >
> > (D) DHS placed the arriving alien in removal proceedings
> > either upon the arriving alien's return to the United States
> > pursuant to the grant of advance parole or after USCIS denied
> > the application.

*Id.* Sub-provisions (B) and (D) expressly contemplate that someone who had applied for an adjustment of status, like Mr. Wang, would be considered an arriving alien even if returning to the U.S. on advance parole.

Another regulation describes the effect of travel outside the United States with advance parole on an application for adjustment of status:

> The travel outside of the United States by an applicant for adjustment who is not under exclusion, deportation, or removal proceedings shall not be deemed an abandonment of the application if he or she was previously granted advance parole by the Service for such absences, and was inspected and paroled upon returning to the United States. *If the adjustment of status application of such individual is subsequently denied, he or she will be treated as an applicant for admission, and subject to the provisions of section 212 and 235 of the Act.*

8 C.F.R. § 245.2(a)(4)(ii)(B) (emphasis added).  While this regulation does not specifically describe advance parolees returning to the United States as arriving aliens, it specifies that such people have not been *admitted* to the country.  Such a fact is relevant to the instant case because of the check boxes on Mr. Wang's NTA.

As discussed above, the government marked the box on Mr. Wang's NTA for "You are an arriving alien" with an "x."  EFC No. 13-2 at 2.  Because Mr. Wang was paroled into the country and because he has not been admitted, the other two options—"alien present in the United States who has not been admitted *or paroled*" and "*admitted* . . . but removable"—wouldn't apply to him.  The only option to mark was arriving alien.  This is by no means determinative, but supports

the Court's conclusion that the government properly designated Mr. Wang as an arriving alien.  The Court would thus deny the petition.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES the Application for Order to Show Cause (ECF No. 2) and DISMISSES the Amended Petition (ECF No. 13) and orders the Clerk to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, July 16, 2025.



Jill A. Otake
United States District Judge

CIV. NO. 25-231 JAO-RT, *Wang v. Derr*; Order Dismissing Amended Petition for Writ of Habeas Corpus (ECF No. 13)